GOODWIN AND ANOTHER *vs.* THE UNITED STATES ANNUITY
AND LIFE INSURANCE COMPANY.

In an action of *assumpsit*, upon the common counts against a corporation, to recover for the expense of obtaining the defendant's charter, the plaintiffs, under the count upon an account stated, rested their case, on proof of an entry in what they claimed to be a record book of the defendants, of a vote of the directors, at a meeting held on the 16th of January, which approved of the plaintiffs' bill, and directed the same to be paid. Held, that, for the purpose of showing that such record book was not authentic, two other books, purporting to contain records of the proceedings of said directors on the same day, and in which said vote did not appear, were admissible.

The plaintiffs, having in such action adduced entries, in said book, of the proceedings of the directors at their meeting on the 15th of January, which stated that such meeting was adjourned to the 16th, which entries they claimed to be conclusive, and could not be contradicted; it was held that the defendants might show, by parol, that said meeting was adjourned, not to the 16th, but to the 17th of January.

The managing directors of a corporation do not constitute the corporation itself, but are only its agents, and their acts, within the scope of their authority, are binding on it. Although it is usual to record such acts of the directors, this is not necessary to their validity.

Where the charter, or by-laws, of a corporation require that its directors shall make a record of their votes, whether such requirement is not merely directory,—Qu ?

The defendants, in such action, claimed that if said meeting of the directors, on the 15th of January, was adjourned to the 16th, and there was a meeting of said directors on the latter day, it was held secretly, and concealed intentionally from the knowledge of the directors. Held, that, for the purpose of proving such secrecy and concealment, in connexion with other evidence, they might show that meetings of said directors were held at about the same time, at other places than that, where the directors' meetings were usually held, and to which the meeting of the 15th of January was adjourned.

Held, also, that evidence, offered by the defendants, that said vote of the 16th of January, approving the plaintiff's bill, was rescinded by a vote of the directors passed at a subsequent meeting, was properly admitted, for the purpose of rebutting a claim that the defendants acquiesced in the former vote, and of showing that they repudiated it, when it became known to the directors, who were not present when it was passed.

It is now an established principle, however the law stood anciently, that an account stated may be impeached for fraud, or mistake.

Where, in such action, the court instructed the jury, that if the defendants had proved that the purchaser had paid the plaintiffs a premium upon shares of

stock in said company, partly to reimburse them for the expenses of obtaining the defendants' charter; and the defendants, when the vote, relied on by the plaintiffs, was passed, concealed that fact from the directors, who were ignorant of it, such concealment was a fraud, which would open the account stated, and defeat the plaintiffs' recovery; it was held, that such instruction was correct.

ACTION of *assumpsit* on the common counts. The defendants, having moved for a bill of particulars of the plaintiffs' demands, the same was exhibited as follows :

"The United States Annuity and Life Insurance Company, 1850.     To James Goodwin and Guy R. Phelps,       Dr. For expenses paid in obtaining charter, including commissioner's fees, and interest on money advanced,   $1,000
> > Endorsed as follows:
> > > James Goodwin and Guy R. Phelps.
> > > Bill of expenses pr. charter,              $1,000

Approved in directors' meeting, Jan. 16, 1851.
> > > > N. H. MORGAN, Clerk, *pro tem.*"

On the trial upon the general issue, the plaintiffs, for the purpose of proving the matters contained in the count in the declaration, upon an account stated, offered in evidence, a record of the following votes which they claimed to have been passed by the directors of the aforesaid company, contained in a certain record book, which was produced :

> > *Directors Meeting, Jan.* 15, 1851.
>    *       *       *       *       *       *

Voted, That this meeting adjourn to meet at the state bank building, in Hartford, on the 16th inst. at 2 o'clock, P. M.   Adjourned.
> > > Attest,     N. A. COWDRY, Clerk.

> > *Directors Meeting, Jan.* 16, 1851.
>    *       *       *       *       *       *       *

Voted, That the bill of James Goodwin and Guy R. Phelps, for expenses in obtaining the charter of this company, including commissioners' fees and interest on monies advanced, amounting to the sum of one thousand dollars,

($1,000,) be, and the same is hereby approved, and ordered paid, from the funds of the company. Voted to adjourn, to meet at the pension office in Hartford, on the 17th inst., at 8 o'clock, P. M. Adjourned.

Attest,     N. H. Morgan, Clerk *pro tem.*

They also produced as a witness, John C. Palmer, who testified that he was a director of said company, at the time when said votes were passed and still remained such director, and that said record book was the record of said company. Thereupon the plaintiffs rested their cause, and introduced no other, or further evidence in chief.

The defendants claimed that the record book produced by the plaintiffs was not the record book of said company, and had never been treated, or recognized as such, and that said votes were not in fact passed as in said book stated; that said meeting of the 15th of January, 1851, was not adjourned to the 16th of January, but was in fact adjourned to the 17th of January, and that said meeting of the 16th of January, 1851, was not held in pursuance of adjournment, and was not a legal meeting of the directors of said company; that no notice of said meeting was given to any of the directors of said company, except three, there being at that time, seven directors, three of whom, by the by-laws of the company, were sufficient to constitute a quorum; that three only of the directors of said company were present at said meeting, and that the same was not fairly and openly held. The defendants, in support of said claim, offered witnesses to prove that the meeting of the 15th of January was adjourned from the 15th to the 17th of January, and not to the 16th, as stated in said vote; to which testimony the plaintiffs objected, on the ground, that it was not competent for the defendants to contradict their own record. But the court overruled the objection, and admitted the testimony. The defendants also offered evidence to prove, that some time subsequent to the passing of said vote of January 16th, the directors of said company passed a vote, rescinding said vote of January

16th. The precise time of passing said vote the witness did not recollect, but thought it might have been as late as October, 1851. The written evidence of the vote being in the possession of the plaintiffs, who did not produce it, the precise time did not appear. To this evidence the plaintiffs objected, upon the ground that the same was not admissible for any purpose. But the court overruled the objection, and admitted the evidence, for the sole purpose of showing, that the defendants did not acquiesce in the said vote of the 16th of January, but repudiated the same, within a reasonable time after the same became known to the other directors of the company.

The defendants, for the purpose of showing that said record book was not the record book of the company, produced two other books, which they claimed to be the true records, in which said vote of the 16th of January did not appear, and the defendants offered evidence to prove that these books were treated as the records of said company.

To this evidence the plaintiffs objected, and insisted, that whether these books were, or were not, records of the company, did not conduce to show that the book produced by the plaintiffs was not a record of the company, and that the company did not pass said votes of the 15th and 16th of January, and that said evidence was not legally admissible. But the court overruled the objection, and admitted the evidence.

The defendants, for the purpose of proving that the plaintiffs had been reimbursed for the expenses incurred in obtaining the charter of said company, offered the testimony of several witnesses, to prove that, shortly prior to the 16th of January, 1851, they had purchased, from the plaintiffs, shares of stock in said company, and paid them a premium of five dollars a share therefor, and that, during the negotiations for such purchase, the plaintiffs declared that the premium was charged, partly as a profit, and partly, to reimburse themselves said expenses. To this testimony the plaintiffs

objected, on the ground that it conduced to prove no matter in issue between the parties. But the court overruled the objection, and admitted the evidence.

The plaintiffs requested the court to charge the jury, that the record of the defendants, of their votes of the 15th and 16th of January, 1851, was conclusive upon the defendants, as to the facts stated in that record, and could not be impeached, contradicted or impaired by parol evidence, that is, the evidence of witnesses swearing that the facts stated in that record were not true. But the court did not so charge the jury, but charged them that it might be contradicted by parol evidence.

The defendants claimed, that the bill presented by the plaintiffs to the directors on the 16th of January, 1851, and on which the vote of that day was founded, did not truly represent the plaintiffs' claim, but was intended, fraudulently to misrepresent the character of their claim, and that the moneys, paid by the plaintiffs, were not paid as expenses for procuring the charter, for the benefit of the company, but were, in fact, paid for the private benefit of the plaintiffs, to enable them to secure the control of the company, by the purchase of its stock.

The plaintiffs claimed the contrary, and insisted that the money was paid, as represented in their bill, but insisted that however the fact might be, if the directors, who approved the bill, had full knowledge of all the facts, and were not misled by the misrepresentations, then the vote would be binding, and the account not liable to be opened, by reason of the facts aforesaid, and requested the court so to instruct the jury. The court did not instruct the jury in conformity to this claim of the plaintiffs, but instructed the jury, that, if a fraud was intended upon the corporation, the knowledge of the directors, approving said bill, would not necessarily do away with the effect of that fraud, and if it was intended that the bill should be one thing on its face, and another in fact, and not give true information to the corporation, who

were to pay the bill, then the misrepresentations would be evidence of fraud, proper to be considered by the jury, notwithstanding the supposed knowledge of the directors. The court also charged the jury, in regard to the testimony in reference to the premiums, paid to the plaintiffs, on the stock transferred by them, that if it was true, that the plaintiffs got double pay by getting a premium, and the directors were ignorant of it, it would be inequitable, and that if the plaintiffs concealed this, it would be a fraud which would vitiate said bill, and would open the account stated.

The defendants also produced as a witness, Nathan M. Waterman, one of the directors of said company, when said vote of the 16th of January was passed, and proposed to him the following questions: "Had you any notice of a meeting in the state bank building? referring to the meeting of the directors, mentioned in said vote of the 16th of January To this question and evidence the plaintiffs objected, but the court admitted the evidence, and the witness testified that he was not, to his knowledge, notified of any meeting in the state bank, and, on being cross-examined, testified that he did not know that he was in town at said time. The defendants also offered, in evidence, sundry records of votes on their books, for the purpose of showing that other meetings of the directors of said company, were held at other places, and not at the state bank building, and claimed that said evidence was admissible, for the purpose of showing that said meeting of the directors of said company, referred to in the said vote of the 16th of January, 1851, was held secretly, and intended to be kept from the knowledge of the other directors. To this evidence the plaintiffs objected, and insisted that the same was not legally admissible, but the court overruled the objection, and admitted the evidence.

The jury, having returned a verdict in favor of the defendants, the plaintiffs filed a motion for a new trial, on the ground that the court erred in admitting the testimony objected to, and in the instructions given to the jury.

Goodwin and another *v.* The U. S. Annuity and Life Insurance Company.

*Welles & Fellowes* for the plaintiffs.

I. The court admitted improper testimony. 1. Evidence of witnesses to prove that the meeting of the 15th of January was adjourned from the 15th to the 17th, and not to the 16th, as stated in the vote of the directors. This evidence does not tend to support any part of the defendant's claim, except that the meeting was not adjourned as stated in the vote. 2. Evidence to prove that the defendants rescinded the vote of January 16th. If they did rescind their own vote, the plaintiffs had nothing to do with that, and are not to be affected by it. It was *res inter alios acta.* 3. Evidence to prove that two other books were treated as the record books of the company. 4. Evidence of several witnesses in regard to a sale of stock and premiums, and declarations of the plaintiffs that the premiums were partly profit, and partly for expenses of charter. 5. Evidence of N. M. Waterman that he was not notified of the meeting of the 16th of January. 6. Evidence from sundry records on their own books to show that other meetings of the directors were held at other places, and not at the state bank building. *Jackson* v. *Walsh,* 3 Johns., 226. *Mayor* &c. v. *Wright,* 2 Port., 230. Angell and Ames on Corp., 607.

II. The court erred 1. In refusing to charge the jury, as requested by the defendants, as to contradicting their own record by parol. 2. The charge that if the account of the plaintiffs did not truly represent the facts, and the directors knew it, yet that the knowledge of the directors would not do away with the effect of the fraud, was erroneous. 3. The charge of the court in regard to the premiums paid to the plaintiffs; that if they got double pay and did not inform the directors, it would be inequitable, and would be a fraud, which would vitiate their bill, and open the account stated, was erroneous. 3 Bl. Com., 164. 2 Com. on Con., 176. 1 Saund. Pl. and Ev., 42–49. *Salmon* v. *Watson,* 16 E. C. L. R., 363. 4. J. B. Movn., 73.

*T. C. Perkins* and *Hubbard* for the defendants.

I. The evidence, that the pretended meeting of the 16th of January was not in fact held by the board, was admissible, as a circumstance tending to show that the book, offered in evidence by the plaintiffs, was not, (as the defendants claimed it was not,) the authentic records of the board. Even if the plaintiffs' book is assumed to be the records of the board, the evidence was admissible as showing an error in the records. The records of a private corporation are only its own written declarations of its corporate acts, and as such may be contradicted. The directors are not the corporation, but mere agents. No record of the doings need be made, or if made, the principal may contradict the declaration of his agent. Angell and Ames on Corp., § 291.

II. The evidence that the books, offered by the defendants, were the true records of the company, and were treated as such, was admissible. The fact that this board treated this book as its records, and approved the record from time to time as made, served to authenticate this book as the true records of the board. If this was the true record, it served to show that no meeting was held on the 16th of January. If the defendants denied that the plaintiffs' books were records, and yet had omitted to produce and prove the true records, (they having the power to produce them,) this omission would have been of itself evidence against the defendants.

III. Evidence that the plaintiffs had reimbursed themselves for the expenses of the charter, and had so declared to the stockholders, was admissible. This evidence tended to show that the plaintiffs had no claim against the defendants. It estopped the plaintiffs from making such a claim. It conduced to prove fraud on the part of the plaintiffs, as charged in the notice.

IV. The judge rightly charged the jury that a knowledge of the fraud, by the three directors, would not necessarily do away with the effect of the fraud. The charge presupposes

that the plaintiffs had no legal claim, and that both they and the three directors knew it, and that the plaintiffs were designing to defraud the corporation. The directors had no power to acknowledge such a debt. *Salem Bank* v. *Gloucester Bank*, 17 Mass., 29. If the plaintiffs were designing a fraud on the corporation, and the directors knew it, it would prove a collusion and fraud, on the part both of the plaintiffs and the three directors, and the corporation would not be bound by these acts.

V. The evidence that the meeting of the 16th of January was held at an unusual place, was admissible. This was a circumstance tending to show that the business to be done was of a fraudulent character, and was designed to be kept secret. Angell and Ames on Corp., § 496.

STORRS, J. The exceptions, taken by the plaintiffs, to the rulings of the superior court, on the trial of this case, will be noticed in the order in which they are presented on this motion.

1. The plaintiffs, under the count upon an account stated, rested their case on proof of an entry in what they claimed to have proved to be a book of the defendants, containing the proceedings of their directors, which entry consisted of a vote of the directors at their meeting on the 16th of January 1851, approving of the bill of the plaintiffs, the amount of which was sought to be recovered in this case, and directing the same to be paid. The defendants claimed that this was not a genuine, or authentic record book of the proceedings of their directors, but that it was spurious and unauthorized, and that no such vote was passed at that meeting ; and on this point introduced two other books, purporting to contain, among others, the proceedings of the directors, at their meeting on said 16th of January, and in which said vote did not appear, accompanied with evidence that they were the true and genuine record books of the directors, and contained the minutes of their proceedings, and were treated as such

by the defendants. The plaintiffs objected to this evidence, on the ground that it did not conduce to show that the book which they had produced was not genuine, and that the books offered by the defendants did not conduce to show that the directors did not pass said vote. In order to render the book, offered by the plaintiffs, evidence against the defendants, it was necessary for the former to prove that it was authentic and genuine, and it was competent for the defendants to rebut that proof by any testimony proper for that purpose. We are of opinion that the evidence, so offered by the defendants, conduced to show that the book, introduced by the plaintiffs, and which contained entries of a character different from, or inconsistent with those in the books introduced by the defendants, was spurious, and that the latter books, if found to be genuine, inasmuch as they did not mention any such vote as that relied on by the plaintiffs, conduced to prove that it was not passed. The evidence, therefore, was properly received.

2. The defendants, for the purpose of showing that, if a meeting of the directors was held on the 16th of January, it was illegal and the votes therein passed consequently void, were permitted, against the objection of the plaintiffs, to prove that the meeting of the directors of the 15th of January, the entries of the proceedings of which, adduced by the plaintiffs, stated that it was adjourned to the 16th of January, was, in fact, adjourned, not to that day, but to the 17th of January. The plaintiffs insist that the entries or minutes of the proceedings of the directors, adduced by them, were conclusive, and could not be contradicted. We are referred to no case in support of this claim, nor do we think it sustainable. Where the affairs of a corporation, like that of the defendants, are managed by a board of directors, they are only the agents of the corporation, and their acts are binding on it, when they act within the scope of their authority, however that authority may be conferred; but they do not constitute the corporation itself. The character of their

authority is the same as that of a managing board of an unincorporated association. It is not necessary, from the nature of their authority, that the acts of either of these bodies should be done by writing or vote, and the inconvenience of transacting all the numerous details of their business in that mode would be intolerable. They may act in the same manner as the agents of any other persons. It is consequently not necessary to the validity of their acts that they should be recorded, although this is perhaps usually done. It may be, and is frequently, required by the charter, or by-laws, of a corporation, that its directors shall make a record of their proceedings, in which case it is their duty to do so; in that case, however, it is at least questionable whether such requirement is not merely directory, but there is no claim that there was any such requirement as to the defendants' corporation. If a record is kept of the proceedings of the directors of a corporation, it constitutes legal evidence of those proceedings; but as such records consist merely of the written entries of their acts made by a clerk appointed by them for that purpose, for the convenience only of themselves, or the corporation for whom they act, we think that they are not of so high or solemn a character as to be conclusive, and that they may therefore be contradicted by any person whose interests may be affected by them. Such entries stand on the same ground only, as the entries of the acts of any other persons made in their private books. The evidence, introduced for the purpose of such contradiction, was therefore properly admitted. This disposes also of the exception taken by the plaintiffs to the charge of the court below on this point.

3. The defendants claimed that if the meeting of the directors on the 15th of January was adjourned to the 16th of that month, and there was a meeting of directors on the latter day, it was not held in pursuance of said adjournment; that notice of it was not given to any of the seven directors of the company except the three who were present thereat,

and who, by the by-laws of the company, were sufficient to constitute a quorum; and that the meeting was not held fairly and openly, but that it was held secretly, and concealed intentionally from the knowledge of the other directors. For the purpose of showing such secrecy and concealment, we are of opinion that, in connexion with the other evidence which appears to have been adduced by the defendants in support of this claim, it was competent for them to prove that other meetings of directors were held about the same time, at other places than the building where the directors' meetings were usually held, and to which the meeting of the 15th of January was adjourned. The clandestine object, which the proof of the defendants, especially that as to the manner in which the holding of the meeting of the 16th was communicated to some and withheld from the other directors, tended to show, would be more successfully accomplished by holding that meeting at some other place than that to which it had been adjourned, and the circumstance, that meetings were held about that time at other places, was one which was proper to be considered on the enquiry whether the meeting in question was held at one of those places.

4. The testimony of Waterman was plainly admissible to prove the claim of secrecy and concealment in regard to the meeting of the 16th of January.

5. The evidence, offered by the defendants to prove that the vote, relied on by the plaintiffs, was rescinded by a vote of the directors passed at a subsequent meeting, was properly admitted for the purpose of showing that the defendants did not acquiesce in the former vote, but repudiated it when it became known to the directors who were not present when it was passed; as it repelled the inference which might otherwise be drawn of their assent to it.

6. The court charged the jury that if, as the defendants claimed to have proved, the premium paid by them on their stock, when they bought it of the plaintiffs, was paid by them to, and received by the latter to reimburse them for the

expenses of obtaining the defendants' charter, and the plaintiffs, when the vote relied on by them was passed, concealed that fact from the directors who passed it, and the latter were ignorant of it, such concealment was a fraud which would defeat the plaintiffs' recovery. The plaintiffs except to this charge on the ground that the account stated, as evidenced by that vote, was conclusive as to the amount due to them. Without enquiring into the applicability of the rules on the subject of an account stated, where there is no positive, direct statement of an account, but the promise on a count upon an account stated, is only a matter of inference, or implication, from other circumstances, *it is sufficient to* say that, however the law stood anciently on the effect of stating an account, it is now the established doctrine that an account stated may be impeached for fraud or mistake. *Trueman* v. *Hurst,* 1 T. R., 42. *Perkins* v. *Hart,* 11 Wheat. R., 237. *Barger & ux.* v. *Collins,* 7 Har. & Johns., 213. *Harden* v. *Gordon,* 2 Mason R., 541, 561. *Thomas adr. &c.* v. *Hawkes, et al.,* 8 M. & W., 140. The case last cited is exactly analogous to the present, in which the plaintiffs, from the admission, (evidenced by the vote on which they relied,) sought simply to infer the promise alleged in the count in question.

The charge on this point was therefore correct, as on the facts claimed by the defendants, there was both fraud on the part of the plaintiffs and mistake on that of the defendants. This disposes also of the objection, raised by the plaintiffs, to the evidence of their declarations that they had been reimbursed for the expenses, sought to be recovered in this case.

7. The plaintiffs except to the charge below because the court did not instruct the jury that the vote of the 16th of January was binding on the defendants, and that the account between the parties was not liable to be opened, although the bill presented by the plaintiffs to the directors who passed that vote, and on which it was founded, misrepresented the

HARTFORD.

purpose for which the expenditures of money, in the course of procuring the defendants' charter, were made by the plaintiffs, and a fraud was intended to be thereby perpetrated on the defendants, if those directors knew the facts and were not misled by those misrepresentations; but instructed them that if the plaintiffs intended that the bill should not give true information to the defendants in regard to the object of those expenditures, the misrepresentation would be evidence of fraud, proper to be considered by the jury, notwithstanding the knowledge of the directors. This charge was obviously correct. The fraudulent misrepresentations, under which that vote was procured, would plainly avoid the promise, or admission, evidenced by it, if the directors had no knowledge that they were false. Their knowledge that they were untrue, when they passed the vote, showed a combination between them and the plaintiffs to cheat the defendants. No reasoning is necessary to prove that a promise, or admission, by an agent, whether of a natural or artificial person, derives no validity against the principal, from the fact that it was obtained by a fraudulent conspiracy between such agent and the person to whom it was made.

A new trial is not advised.

In this opinion, the other judges, ELLSWORTH and HINMAN, concurred.

New trial not granted.

## McCasky *vs.* Sherman.

In accordance with the common law of England, and with the decisions of this state, the law of the state of New York, as it now stands, and as evidenced by the reports of their judicial decisions, makes the endorsee of a negotiable promissory note, who takes it in the ordinary course of business in payment of a pre-existing debt to himself, a *bona fide* holder thereof for value, who may recover its amount as against any prior party, although he may have received it from a holder, not authorized to negotiate it.

THIS was an action of *assumpsit* to recover the amount of a promissory note.

The declaration contained a special count to which the common counts were added.

The note declared on was for the sum of $755.87 ; was dated at Albany on the 16th day of January, 1849 ; was payable ninety days after date, at the bank of Albany, to the order of the defendant, and signed and endorsed by him.

The defendant pleaded the general issue with notice of special matter to be given in evidence.

The superior court for the county of Hartford, at the term holden in December, 1855, found the following facts, and reserved the case for the advice of this court.

The defendant was a native of Albany, in the state of New York, and resided there until about the year 1838, when he removed to the city of New York; for several years before his removal from Albany, he was engaged in the practice of law, and thereafter, until after the making of said notes, had, residing in Albany, two brothers, one of whom viz : E. J. Sherman, at the time the first note hereafter described was made, and when it fell due and was protested, was engaged in the practice of law, and the other in mercantile pursuits, as a partner in the firm of Bachelder & Sherman. Both said brothers of the defendant were known to the plaintiff, and when the first note fell due, both knew that the defendant had removed from New York, and then

resided at Buckland, in the town of Manchester, in Connecticut; but the plaintiff did not know of said removal of the defendant, or where the residence of the defendant then was. The defendant, after his removal from Albany, resided with his family and was engaged in the practice of law in the city of New York, until the spring of the year 1848, when he came to Connecticut and opened a law office in Hartford, and about the first of June, 1848, removed his family from the city of New York to Buckland, where he subsequently resided. On the 25th of July, 1848, Josiah S. Van Ingen, a nephew of the defendant, applied to him at Buckland, to endorse for the accommodation of Van Ingen, Van Ingen's note of that date, for $730.74, payable to the order of the defendant, at the Bank of Albany, in said city of Albany, on the 4th of October, 1848, and on interest, and thereupon Van Ingen made said note, and the defendant endorsed it in blank, and delivered it to Van Ingen, without any consideration for said endorsement, and entirely for Van Ingen's accommodation.

Before said note fell due, Van Ingen at Albany transferred and delivered said note for an adequate consideration in money to the plaintiff, who purchased it in the regular course of business, without any notice that it had been endorsed by the defendant for said Van Ingen's accommodation, or was not good business paper, to the validity of which, as against the maker or endorser, no objection could be made.

The plaintiff lodged said note in the Bank of Albany for collection, and when it fell due, viz: on the 4th of October, 1848, being unpaid, the notary employed to protest it, not knowing the residence of the defendant, inquired of the plaintiff where it was; the plaintiff did not know; but knowing that Sherman, of the aforesaid firm of Batchelder & Sherman, was a brother of the defendant, he went to the store of said firm, and there enquired where the defendant resided, and was told that he resided in the city of N. York, which information thus obtained, the plaintiff communicated to said notary; and thereupon said notary, in due time, forwarded a notice

of the non-payment and protest by [mail, directed to the defendant at the city of New York; no further enquiry being made for the defendant's residence by the plaintiff of said notary, said notice was never received by the defendant.

In the month of December, 1848, Van Ingen applied to the defendant at his dwelling in Buckland, and requested him to endorse another note of Van Ingen, for the purpose of renewing and taking up the first, and informed the defendant that the plaintiff desired such renewal, but the defendant refused to make such endorsement, assigning as a reason to Van Ingen, that he was discharged from said first note, for want of notice of its non-payment and protest, and that he would not endorse another note.

At the time the note in suit was made, the defendant being in New York, Van Ingen, (then residing in Albany,) applied to the defendant, and falsely represented to him that the plaintiff had endorsed said first mentioned note; that it was then lying in the bank under protest; that the plaintiff, though a man of considerable property, was pressed for money, and unable to pay said note ; that he desired to obtain further accommodations from said bank, but could not until he had first paid said note, the bank refusing to discount his paper while said note was lying under protest. And that the plaintiff had requested him to procure from the defendant the loan of the defendant's note, to enable the plaintiff to get it discounted, and with the proceeds to take up said protested paper in order that the plaintiff might obtain further accommodations from said bank, and assured the defendant that the plaintiff would take up the new note when it fell due, and that the defendant should in no manner be subjected thereon, and the defendant, relying upon said representations and assurance, made the note in suit and delivered it to Van Ingen, as a loan for the accommodation of the plaintiff, to be forwarded by Van Ingen to the plaintiff, and not for the purpose of paying said note, or of being exchanged therefor, and did not intend thereby to renew, or acknow-

ledge, his liability as endorser of said first mentioned note, and so informed Van Ingen at the time. Said last mentioned note was by Van Ingen, in the defendant's presence, enclosed in a letter directed to the plaintiff at Albany, and deposited in the New York post-office for transmission to the plaintiff by mail, but whether said letter contained any information regarding said note, or of the use to which it was by the defendant designed to be applied, did not appear. Said representations of Van Ingen to the defendant were unauthorized by the plaintiff, and were false in fact; the plaintiff received said last mentioned note before its maturity, in said letter from Van Ingen; but had no notice or information of the manner in which it had been obtained, and received it in the regular course of business in payment of said first mentioned note, and not as a loan, supposing and believing that it was the duty of the defendant to pay said first mentioned note, as his own debt, and that he had made said last mentioned note and forwarded it to the plaintiff for that purpose. It was also found that no action could be sustained against the defendant, upon his endorsement of said first mentioned note.

*Hungerford & Cone*, for the plaintiff.

1. The defendant is, by the laws of the state of New York, liable for the payment of the note in suit, notwithstanding any fraud practiced upon him by Van Ingen. The note was taken in the regular course of business, before due, and in payment of the defendant's own debts, his liability as endorser having been fixed. *Pugh* v. *Durfee*, 1 Blatch., 412.

2. If received in payment of a debt of Van Ingen, it was received for a valuable consideration, and the defendant is liable. Story on Prom. Notes—note to § 195, p. 232, and the numerous authorities there collected, and particularly the case of *Swift* v. *Tyron*, 16 Pet., 15, cited at length in this note. *White, &c.* v. *Springfield Bank*, 3 Sanford, 222. *Catlin* v. *Hanson*, 1 Duer., 309. *Young* v. *Lee*, 18 Barb. R., 187. In

these cases that of *Mather* v. *McDonald*, 6 Hill, 93, which will be relied upon by the defendant, is fully commented upon and explained. The plaintiff is entitled to recover, by the laws of the state of New York, upon the common counts, either upon the note now in suit, or by virtue of the defendant's endorsement. *Cayuga Co. Bank* v. *Warden &c.*, 2 Sel., 19.

*Fellowes & Sherman*, for the defendant.

1. The plaintiff is the payee, and original party to the note in suit, and so decided to be in the pleadings, and is so in law. The note was procured of the defendant for the plaintiff's accommodation, by fraud of Van Ingen. The plaintiff is affected with knowledge of the fraud, and liable to this defence, being the payee. If he takes the note of Van Ingen, he makes him his agent for procuring it, and is bound by his acts, and must take it with all the defences attached to it. If he repudiates the acts of Van Ingen, who professed to act as his agent, he gets no title to the note. It never was delivered to him.

2. But if the plaintiff is not the payee, and original party, as the note was procured of the defendant by fraud, the plaintiff must show himself to be a *bona fide* holder, for value. The *onus* is on him to show this, and failing so to do, he cannot recover. No value is pretended to have been paid by him. It is said that he received it, in payment of the former note. The court has found that he did not so receive it. He could not do so, without the defendant's assent. The defendant made it for an entirely different purpose, to wit: the plaintiff's accommodation. The court have so found. But if he did, yet the contract was made in New York, and payable in N. York, and must be construed according to the law of New York; and by the law of New York, an antecedent debt of itself is not a valuable consideration. The plaintiff parted with nothing, he has not the old note,