BOSTON AND LOWELL RAILROAD CORPORATION *vs.* NASHUA
AND LOWELL RAILROAD CORPORATION.

Suffolk.  March 4, 1892. — October 21, 1892.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP,
& BARKER, JJ.

*Railroad* — *Contract* — *Award of Commissioners* — *Pleading* — *Finding.*

Two railroad corporations, the A. corporation · and the B. corporation, executed a
contract for the joint operation of their roads under the management of one
agent, the joint net income to be divided between them, sixty-nine per cent.
thereof to A. and thirty-one per cent to B.  During the continuance of this con-
tract, which expired in October, 1878, no terminal charges were claimed by
either corporation from the other, and during that time the corporations jointly
owned as tenants in common the freight-houses in the terminal city, in the pro-
portions above stated; and the title so continued until November, 1880, when
B. conveyed its interest in the freight-houses to A.  From October, 1875, to
October, 1880, A. occupied the freight-houses for its terminal business, and no
charge was made by A. against B. for terminals, or by B against A. for rent of
the freight-houses.  In January, 1879, B. filed a petition with the Board of Rail-
road Commissioners, requesting that, as the two corporations could not agree
on the reasonable compensation for which A. should draw over its road the pas-
sengers, merchandise, and cars of B., and provide for it suitable depot accom-
modations, (as each was required to do by the St. of 1877, c. 372, § 166,) the
commissioners would determine the question, and apportion to the corporations
their respective shares of the expenses, receipts, and income of the traffic.  The
commissioners awarded " that A. shall at reasonable times draw over its road
the passengers, cars, and merchandise of B., and provide convenient and suitable
depot accommodations therefor; and in consideration of its so doing, and in full
compensation therefor, the receipts and income from the transportation in which
said corporations are so jointly interested shall be apportioned *pro rata* between
them on the basis of the mileage of said transportation over their respective
roads."  They also awarded a certain rate per mile for the use of cars; and
recited in the award that, "by the understanding of parties, the question of
terminal freight charges was not considered or included."  After January,
1879, when the award took effect, the services specified therein were paid for
according to the terms of the award; and A. subsequently paid B. for the use
of its portion of the freight houses and grounds.  A. afterwards brought an
action against B. for terminal charges on freight from October, 1878, to Octo-
ber, 1880.  *Held,* that the action could not be maintained.

Two railroad corporations, the A. corporation and the B. corporation, executed a
contract for the joint operation of their roads under the management of one
agent chosen by concurrent vote of the directors of both corporations, the joint
net income to be divided between them, sixty-nine per cent thereof to A. and
thirty-one per cent to B.  While the contract was in force, the agent employed
C. for the two corporations.  C. becoming dissatisfied with the amount of his

salary, an arrangement was made by which C. bought a dwelling-house with money furnished by A., and gave A. a mortgage of it. Afterwards the house was conveyed by C. to A., and his mortgage and note were surrendered. C. paid no interest on the mortgage, and no rent; and he and his successor in the employment occupied the house as part compensation for their services. The net profits of the business of the two corporations were divided from time to time between them as required by their contract, but no sum was included in the accounts for the use of the house, a fair rental for which was $250 a year. A. brought an action in the Superior Court against B. to recover thirty-one per cent of that sum during several years while the contract was in force, alleging that the omission to include it in the accounts was by mistake, and that it was due A. "as money had and received to its use." The case was referred to an auditor, who found, as matter of law, that the plaintiff was not entitled to recover. The defendant set up in its answer, and contended, that, if the plaintiff had any legal claim growing out of the use of the house, it was for the use and occupation of the house, and not for money had and received; and asked the court to rule that, upon the pleadings and report, the plaintiff was not entitled to recover. The court, trying the case without a jury upon the auditor's report as the only evidence, "found and ruled that the plaintiff was entitled to recover" a certain sum. *Held*, that the finding of the Superior Court was right; and that an amendment of the count was not necessary in order that the plaintiff might take judgment on the finding.

CONTRACT, in three counts. The first count alleged, in substance, that in 1857 the plaintiff made a contract with the defendant for the joint use of their railroads and property, and the division between them of the net income from said property in the proportion of sixty-nine per cent to the plaintiff and thirty-one per cent to the defendant, and that among other property belonging to it which was thus used by it and the defendant, and the net income of which should have been thus divided between them, was a certain parcel of land and dwelling-house thereon at Lowell, for the use of which there was received by the agent of the plaintiff and defendant the sum of $250 each six months from April 30, 1866, to December 1, 1878, during all which time the contract was in force ; and that the agent of the plaintiff and defendant received and divided the net income of all the property belonging to the plaintiff and defendant between them each six months, and in so doing by mistake omitted to take into account the income of the house and land, whereby the defendant received each six months thirty-one per cent of the income of the house and land more than its proportion of the income of the property of the two parties thus jointly used, namely, the sum of $77.50, amounting in all to $1,950.41, which it owed to the plaintiff "as money had and received to its use."

The second count is not material to be stated.   The third count alleged that the defendant owed the plaintiff a balance of terminal charges on freight between its road and the road of the plaintiff, from October 1, 1878, to October 1, 1880, amounting to $8,144.07.

Trial in the Superior Court, without a jury, before *Dewey*, J., who reported the case for the determination of this court.   The facts appear in the opinion.

The case was argued at the bar in March, 1892, and afterwards was submitted on the briefs to all the judges.

*J. H. Benton, Jr.*, for the plaintiff.

*F. A. Brooks & A. S. Hall*, for the defendant.

FIELD, C. J.   This case was sent to an auditor, and the auditor found for the defendant.   It was then tried by the court without a jury, on the auditor's report, and the court found that the plaintiff was entitled to recover $1,257.73 on account of the first claim made in the declaration, but was not entitled to recover anything upon the second or third claim, and on these findings the case was reported for the determination of this court.   At the argument here, the counsel for the plaintiff waived any exception to the finding of the court on the second claim ; but he contends that its finding on the third claim is erroneous, and the defendant's counsel contends that the finding on the first claim is erroneous.   The third claim is for terminal charges on freight from October 1, 1878, to October 1, 1880.   It appears from the auditor's report that during the continuance of the traffic contract no terminal charges were claimed by either of said roads from the other ; that during this time the parties jointly owned as tenants in common the freight-houses in Boston, the plaintiff owning sixty-nine one-hundredths and the defendant thirty-one one-hundredths thereof; and that the title so continued until November, 1880, when the defendant conveyed its interest in the freight-houses to the plaintiff.   It also appeared that " during the period covered by the present claim, from October 1, 1878, to October 1, 1880, the plaintiff occupied the said freight-houses for its terminal business, and no charge was made by the plaintiff against the defendant for terminals, or by the defendant against the plaintiff for rent of said freight-houses."   The defendant filed a petition before the Board of Railroad Commissioners

on January 21, 1879. A copy of this and a copy of the award of the commissioners are referred to in the report, and are printed with the papers in this case. There are some differences between the petition as printed and the description of it in the award, and it is possible that there has been some mistake in the printing of the papers. The petition as recited in the award was under §§ 165–167 of the St. of 1874, c. 372, now Pub. Sts. c. 112, §§ 216–218, and the request as recited therein was "that as the two corporations could not agree on the reasonable compensation for which the Boston and Lowell should draw over its road the passengers, merchandise, and cars of the Nashua and Lowell, and provide for it suitable depot accommodations, the commissioners would determine the question, and ' apportion to the corporations their respective shares of the expenses, receipts, and income ' of the traffic." See also Gen. Sts. c. 63, § 118. The petition as printed contains an error with reference to the statute under which it was apparently drawn, and the prayer is somewhat different from that recited in the awards. We think, however, that the award must be taken to show the character and scope of the hearing actually had before the commissioners. The commissioners proceeded to consider the advantages and disadvantages under which the two roads collected, transported, and delivered freight and passengers. The collection of a " scattered traffic," they say, is the " disadvantage under which the Nashua and Lowell labors." The furnishing of terminal facilities in Boston " is the burden of the Boston and Lowell. The commissioners are disposed to consider that furnishing the terminal facilities is, if anything, a heavier burden in the present case than the collection of the business. . . . Taking, therefore, all the circumstances into consideration, they base their award accordingly upon an equal division of receipts in proportion to the mileage the business is carried over the road of each company, a suitable allowance being made for the use of cars. The commissioners do, therefore, determine and award that the Boston and Lowell Railroad Corporation shall at reasonable times draw over its road the passengers, cars, and merchandise of the Nashua and Lowell Railroad Corporation, and provide convenient and suitable depot accommodations therefor ; and in consideration of its so doing, and in full compensation therefor, the receipts and

income from the transportation in which said corporations are so jointly interested shall be apportioned *pro rata* between them on the basis of the mileage of said transportation over their respective roads." Then follows an award for the use of cars, and a provision that the award shall take effect as of the date of the filing of the petition, January 21, 1879. The last clause but one of the award is in these words: " By the understanding of parties, the question of terminal freight charges was not considered or included." But for this clause there could be no doubt about the meaning of the award, construed with reference to the statutes under which the commissioners were acting. Section 166, c. 372, of the St. of 1874, required each of these roads, at reasonable times and for a reasonable compensation, to "draw over its road the passengers, merchandise, and cars of the other," and for a reasonable compensation to " provide upon its road convenient and suitable depot accommodations for the passengers and merchandise of the. other road passing to and over it," and to " receive and deliver the same in the manner it receives and delivers its own passengers and freight."

The award is clear that the amount awarded to the Boston and Lowell Railroad Corporation is in full compensation for drawing over its road the passengers, cars, and merchandise of the Nashua and Lowell Railroad Corporation, and for providing convenient and suitable depot accommodations therefor. Apparently, the terminal services sued for are incidental to the furnishing of suitable depot accommodations for the merchandise transported. We do not know what the clause relating to terminal freight charges means. The commissioners had taken notice of the fact that a portion of the terminal grounds and buildings used for freight purposes was owned jointly by the two companies, but they say that " this ownership, so far as it is joint, does not affect the present award, being a matter to be settled elsewhere by division or payments for use and occupation. The case stands, therefore, simply as if the Nashua and Lowell sought to reach the terminal accommodations of the Boston and Lowell in order to make use of them." The clause may mean that terminal freight charges as such, and as distinguished from the general service of providing suitable depot accommodations, were not considered or included, or that, as the freight-houses

were owned jointly, the commissioners would not consider a separate charge for the use of them ; but whatever it may have been intended to mean, we think that it cannot be held to cut down the effect of the operative words of the award, and that these clearly include the customary service of providing convenient and suitable depot accommodations for passengers and merchandise. We understand that after January 21, 1879, the services specified in the award were paid for according to the terms of the award. We infer from what is said in the briefs that these services from October 1, 1878, to January 21, 1879, were paid for in the same manner. The fact that under the traffic contract no separate charge for furnishing terminal facilities was made by each against the other, and that during the period covered by the claim no such charges were made by the plaintiff against the defendant, seems to indicate that no separate charge for terminal facilities was intended by the parties. The fact that the plaintiff subsequently paid the defendant for the use of its portion of the freight houses and grounds would not create a promise on its part to pay terminal freight charges. The contention of the counsel of the plaintiff in effect is, that, on the facts found by the auditor, the justice who tried the case, as matter of law, was required to find for the plaintiff. We see no facts from which a promise necessarily must be inferred to pay for any terminal facilities in addition to the payments for transportation and depot accommodations, and we are of opinion that the finding on the third claim is not shown to be erroneous, as matter of law.

The claim on the first count on the facts found by the auditor in substance is this. While the traffic contract was in force, the agent of the two roads employed one Paige, as we understand, for the two corporations. Paige becoming dissatisfied with the amount of his salary, an arrangement was made whereby he was furnished with the use of a dwelling-house in addition to the pay he was receiving. This was done by the agent in the following manner. Paige bought a dwelling-house with money furnished by the plaintiff, and gave the plaintiff a mortgage. Afterward the house was conveyed by Paige to the plaintiff, and his note and mortgage were surrendered. Paige paid no interest on the mortgage, and no rent. Paige and his successor in the

employment occupied the dwelling-house as part compensation for their services. A fair rental for the house is found by the auditor to have been $250 a year. The net profits of the business of the two corporations were divided from time to time between the two corporations as required by their contract, but no sum was included in the accounts for the use of the house. The plaintiff alleges that this happened by accident or mistake. By the traffic contract the two roads were managed by an agent chosen by concurrent vote of the directors of the two corporations, and the joint net income was divided, thirty-one per cent thereof to the defendant and sixty-nine per cent to the plaintiff. The accounts must have been made up from time to time during the continuance of the contract, which expired on October 1, 1878, but the defendant has agreed not to set up the statute of limitations. It is clear, we think, that if the plaintiff furnished the use of a house as part compensation for the services of an employee of the two companies, and this was done by the authority of the defendant, the plaintiff should have been allowed in accounting what the use of the house was reasonably worth. The defendant contends that the first count is for money had and received to the plaintiff's use. The objection was taken in the answer, that, if the plaintiff had any legal claim growing out of the use of the house, it was for the use and occupation of the house, and not for money had and received, and this point seems to have been taken in the contention of the defendant at the trial, although this is not quite clear. The case stands thus. The auditor has found, as matter of law, that the plaintiff was not entitled to recover under either count of the declaration. The court, trying the case without a jury upon the auditor's report as the only evidence, " found and ruled that the plaintiff was entitled to recover $1,257.73 upon the first claim made in " the declaration. The defendant requested the court to rule that, upon the pleadings and report, the plaintiff was not entitled to recover on the first count, and excepted to the finding and ruling of the court. The first count sets out the substantive facts relied on, and, although the conclusion is that of a count for money had and received, it yet gives notice to the defendant of the nature of the claim, and the auditor has found the facts. We are of opinion that it was competent for the Superior Court,

hearing the case without a jury on the auditor's report as the only evidence, to find as it did ; that an amendment of the count is not now necessary in order that the plaintiff may take judgment on the finding; and that the exceptions of both parties must be overruled.                                   *So ordered.*