# CHARLESTON

## HARMAN & CROCKETT *v.* MADDY BROTHERS.

Submitted January 17, 1905.        Decided January 31, 1905.

1. SETTLEMENT.—*Mistake.*
    An item omitted, by mistake, accident or fraud, from a settled account between individuals, growing out of an ordinary business transaction, such as a sale of cattle, may be recovered in an action of *assumpsit.* (pp. 72, 73.)

2. INSTRUCTIONS TO JURY.—*Jury Trial.*
    If, upon the trial of the issue in such case, the court instruct the jury that they shall regard the settlement as *prima facie* correct, and that the plaintiff can recover only upon clear and satisfactory proof of the mistake, it is not prejudicial error to refuse to further instruct that the proof, in order to warrant a recovery, must be full. (p. 69.)

3. INSTRUCTIONS TO JURY.—*Must be Clear and Based on Evidence.*
    The giving of an instruction which by reason of its susceptibility of such interpretation as will make it express a proposition at vari

ance with the law applicable to the evidence which forms its subject matter, is erroneous and prejudicial, although anotheri nterpretation of it in harmony with the law is not precluded by its terms. (p. 72.)

4. Jury Trial.—*Evidence.—Province of Jury not to be Invaded.*
   The weight to be accorded to evidence is matter for determination by the jury, and an instruction which wholly or partially withdraws it from their control, by limiting or defining it, is generally cause for reversal. (p. 72.)

Error to Circuit Court, Monroe County.

Action by Harman & Crockett against Maddy Brothers. Judgment for plaintiffs, and defendants bring error.

*Reversed.*

John Osborne and Rowan & Boggess, for plaintiffs in error.

J. D. Logan and J. A. Meadow, for defendants, in error.

Poffenbarger, Judge:

Reversal of a judgment for $463.95, in an action of *assumpsit*, is sought here, upon the theory that the trial court erred in giving certain instructions, in refusing others and in overruling a motion to set aside the verdict, first, because of the misconduct of a juror, and, second, because it is against the weight and preponderance of the evidence.

The declaration contains only the common counts, but the object and purpose of the suit, as shown by the evidence, was to open a settled account and recover said sum, as the amount of an item inadvertently omitted in making the settlement. C. C. Harman and E. King Crockett, partners, doing business as Harman and Crockett, and residing in Tazewell county, Virginia, sold to Maddy Bros., of Monroe county, West Virginia, in the fall of 1902, sixty-six head of cattle, twenty-five of which were known as the J. D. Honaker cattle, weighing 27,050 lbs.; nine as the J. D. Honaker Thorne Place cattle, weighing 10,325 lbs.; nine as the J. B. Shannon cattle, weighing 8,970 lbs.; sixteen as the W. E. Harry cattle, weighing 16,794 lbs.; six as the C. C. Harman cattle, weighing 6,505 lbs.; and one as the heifer, weighing 820 lbs. On the day of the settlement, Maddy Bros. gave to Harman and Crockett, as payment in full for the cattle, one

check for $2,400 and another for $452.    These were dated
October 4, 1902.    The settlement was made October 7, 1902,
and a receipt was given for the  $2,852,  "as payment in full
for 66 cattle."    On the 9th day of October, 1902, Harman
wrote that he had discovered that the checks did not cover
the price of the heifer.    On the next day, he wrote Maddy
Bros. that he had discovered that the $452 check had not
been signed, and saying he had enclosed it for signature.  On
the 20th day of October, 1902, not having received the check,
he made another inquiry about it and again referred to the
omission of the price of the heifer.    On the 27th day of
October, he wrote another letter, containing a statement
showing what the cattle amounted to according to the weights
and prices, and that, after deducting the one $2,400 check
there remained due $856.10, and asking for a check in pay-
ment thereof.    Later, a sight draft was made on Maddy
Bros., and then, on December 2, 1902, they wrote for an
explanation, acknowledging the receipt of the letter, calling
attention to the want of signature to the $452 check, and re-
questing its return to them for signature.    On December
8th, Harman and Crockett replied to this letter, repeating
their statement and showing the balance for which the draft
had been made.    The plaintiffs claim the contract prices of
the cattle to have been $4.75 per hundred for the Honaker
cattle, $4.50 for all the others except the heifer and $3.50 for
the heifer.    And they claim that the error is the omission of
the J. B. Shannon cattle.    In support of this, they produce
the papers on which they say the calculation of the amount
due was made by them.    There seems to be no disagreement
about the weight of the cattle, but the defendants claim the
price of the Honaker cattle to be $4.10 per hundred; part of
the Harman cattle $3.95, and part of them $4.50; the Shan-
non cattle $3.95; the W. E. Harry cattle $3.87; and the
heifer $3.50.    When the contract was made, on or about
September 4, 1902, Harman and Crockett gave to Maddy
Bros. a memorandum thereof and Maddy Bros. gave to Har-
man and Crockett written evidence of the purchase on their
part.    These two papers were produced on the day of settle-
ment.    Maddy Bros. claim the one they had given was re-
turned to them at the time of the settlement and then and
there destroyed.    Harman and Crockett produced as evidence

in this case what they assert to have been the memorandum given by them on September 4, 1902, to Maddy Bros., it being claimed that it was returned to them at the time of the settlement.    It specifies the prices contended for by the plaintiffs.    The defendants say this paper is a fabrication.    On the other hand, Maddy Bros. produced a check book which they say contains, on the backs of certain checks and the cover of the book, the calculations made by them at the time of the settlement.    This the plaintiffs denounce as a fabrication of evidence on the part of defendants.    They say the stub in that check book was not written with the same pen and ink that the check was written with and the check was produced for the purpose of comparison.

After this and other evidence had been introduced, the defendants requested the court to instruct the jury that if they should find a settlement had been made, checks given in full for the amount found due, and a receipt taken from the plaintiffs for the same, they should regard such settlement as *prima facie* correct and hold it to be conclusive, unless the plaintiffs should show by full and clear proof that a mistake had in fact been made.    The court struck out the words "full and" and made the concluding phrase say "unless the plaintiffs show by clear proof that a mistake was in fact made."    This modification made no substantial alteration in the instruction.    *Mahnke* v. *Neale*, 23 W. Va. 57, 80, is cited to sustain the assignment of error.    That case does not use the word "full."    It only says the mistake or fraud shall be clearly shown.    *Neff* v. *Wooding*, 83 Va. 432, is also cited. The language of the court there is that the settlement will not be disturbed unless the party furnish clear proof of a mutual mistake or a fraud.    Neither word has any technical meaning or force and if the instruction, by the use of the words "clear proof," sufficiently directed the minds of the jury to the requirement that there must be substantial and preponderating evidence of the mistake, such as to satisfy them of its existence, nothing more was required.    In an instruction given at the instance of the plaintiffs, the court said the testimony must be clear and the proof satisfactory to warrant a recovery.    The common sense import of this is that the evidence must satisfy the minds of the jurors, convince them of the existence of the mistake.    If the addition of anything

to the word "clear" was necessary, it has been supplied in this last instruction. The legal effect of a mere statement of an account is to dispense with proof of the items of which it is composed, make the result *prima facie* correct and cast upon the party denying its correctness the burden of proving a mistake or fraud as ground for re-opening it. *Lockwood* v. *Thorne,* 18 N. Y. 285; *Wharton* v. *Anderson,* 28 Minn. 301. To open a settled account, a higher degree of proof is necessary than in the case of a stated account, but the rule requires only clear and convincing evidence. In *Chubbuck* v. *Vernan,* 42 N. Y. 432, it is stated as follows: "A party who seeks to open a settlement of accounts, on the ground of mistake, assumes the burden of proving distinctly wherein the mistake consisted, and of furnishing the data by which it may be corrected." The common law does not recognize the Roman Civil law division of proof into two classes, *plena probatio* and *semiplena probatio.* 1 Greenl. Ev. section 119, Vol. 3. section 409. If it did, the proof in this case is not within the rule.

Instruction No. 1, given at the instance of the plaintiffs, reads as follows: "The court instructs the jury that when an accusation is made by one party against another of the existence of a certain fact, and the party called upon for a reply, and he failing to reply, when men *simularly* situated under like circumstances should do so the fact of not so doing is considered by the law as an admission of the correctness of the accusation or existence of the fact." Of this the plaintiffs in error complain bitterly. They say it virtually tells the jury that the silence of Maddy Bros., after their attention had been called to the error, and pay for the alleged omitted item had been demanded, for a period of more than two months, amounts to a conclusive admission of their liability. In other words, they say the court, by giving said instruction, rather pressed upon the jury, as a presumption of law, the view that this conduct on the part of defendants is sufficient proof, without regard to any other circumstance, to warrant a verdict against them. On the other hand, for the defendants in error, the instruction is regarded as only intended to fix in the minds of the jury that the circumstance of silence is an evidential fact for their consideration. Such is undoubtedly the character of that fact. It does not rise

to the dignity of an estoppel and cannot be regarded as conclusive evidence of liability on the theory of a mistake. In support of the instruction, section 197 of Greenl. Ev. is cited. This only says that admissions may be implied by acquiescence, and instances a number of examples of it by way of illustration. The Section does not deal with the weight, or probative force of such admissions. Consideration of that is postponed to section 212 of the same volume, where they are classed as non-judicial admissions and shown not to be conclusive. Among these are classed accounts rendered, and of them it is said they are not conclusive but are left at large. "to be weighed with other evidence by the jury." This instruction tells the jury that silence, under circumstances calling for a response, is considered by law as an admission of the existence of a fact. Admissions other than judicial admissions and admissions by deed are seldom, if ever, conclusive, unless they have been acted upon by the opposite party to his prejudice so that they must be made conclusive upon the party making them to the end that injustice and injury may not result to the party who has acted upon them. "Verbal admissions which have not been acted upon, and which a party may controvert, without any breach of good faith or evasion of public justice, though admissible in evidence, are not held conclusive against him." 1 Greenl. Ev. section 209. After giving some illustrations, the author further says in this section: "In these, and the like cases, no wrong is done to the other party by receiving any legal evidence. showing that the admission was erroneous, and leaving the, whole evidence, including the admission, to be weighed by the jury." Such being the character of the admission, the inquiry is as to what the instruction means, what effect it, may have had upon the jury and whether it was improper?

As the court had admitted the evidence, there was no reason for suggesting to the jury its admissibility. Nor is, it easy to conceive any reason for explaining that it was in the nature of an admission. Its nature as such is readily perceived without the aid of legal knowledge. Hence, the jury probably assumed that there was some purpose in giving it. It was well calculated to impress upon their minds that, under some legal principle, known to the court and unknown to them, it was evidence of a higher nature than other evi-

dence in the case. The language is susceptible of a double meaning. It tells the jury that, tested by the law, the act is an admission. What sort of an admission? A conclusive admission, or only a persuasive admission? How is the court to determine what construction the jury gave it? Strictly speaking, the law does not class it as an admission. The law says it is evidence, because reason and common sense teach that it is an admission. Therefore, it is admissible as evidence for the consideration of the jury. As the instruction is susceptible of two meanings, and the jury might, and probably did, give it a wrong interpretation, it is such an instruction as was calculated to mislead and confuse them. The giving of such an instruction is erroneous. *Railroad Co.* v. *Lafferty*, 2 W. Va. 104; *Bantz* v. *Basnett*, 12 W. Va. 772. "Where an instruction asked for is so imperfectly expressed that its true import is not readily discernible, and would tend to mislead the jury, it should be refused." *Patton* v. *Navigation Co.*, 13 W. Va. 259. "It is error to give an instruction which is confused in its language and calculated to mislead the jury." *State* v. *Sutphin*, 22 W. Va. 771; *State* v. *Cain*, 20 W. Va. 679; *Nicholas* v. *Kershner*, 20 W. Va. 250.

Aside from the view that the jury may have regarded the instruction as virtually binding upon them to find for the plaintiffs, the instruction may be regarded as one upon the weight of the evidence. That is clearly a matter within the exclusive province of the jury, and with which the court cannot deal without doing violence to the principles of law governing jury trial. It is almost universally held that an instruction upon the weight of the evidence is erroneous. *Earpy* v. *Edgington*, 64 S. W. 40; *Baker* v. *Kelley*, 41 Miss. 696; *Westbrook* v. *Howell*, 34 Ill. App. 571; *Ephland* v. *Railroad Co.*, 57 Mo. App. 147; Blashf. Instr. section 236.

A portion of the brief for plaintiffs in error is devoted to the contention that a settled account cannot be re-opened for fraud or mistake in a court of law. The objection seems not to have been brought to the attention of the trial court, but it is said that, as it relates to the jurisdiction of the court, it may be made in the appellate court for the first time. Whether it is made in time need not be considered for the reason that it is not tenable, even if properly made. Jurisdiction of such a case by an action of *assumpsit* was enter-

tained in *Bank* v. *Als*, 5 W. Va. 50.   To the same effect, see
*Goodwin* v. *Life Ins. Co.*, 24 Conn. 591; *Railroad Co.* v.
*Railroad Co.*, 157 Mass. 258.   Settled accounts are most
usually impeached in equity, not because there is no juris-
diction at law, but because the equity forum is generally
preferred on account of its better facilities for careful inves-
tigation of complicated accounts.   The jurisdiction is con-
current, but it is only in cases of complicated accounts that
equity will take jurisdiction for the purpose of settling an
account.   When an account has been settled and there is an
effort to re-open it, equity has concurrent jurisdiction with
the law courts on the ground of mistake or fraud, because
mistake and fraud are recognized heads of equity jurisdiction,
but the jurisdiction in equity is not exclusive in such cases.
It is concurrent.   *Newberger* v. *Wells*, 51 W. Va. 624; *Bur-
bridge* v. *Sadler*, 46 W. Va. 39.

The printed record fails to disclose the entry of any plea
of any kind in the case, but it does say that a jury was im-
paneled to try the issues joined.   Omitted portions of the
record may show pleadings subsequent to the declaration,
but, as there may be none, it is deemed proper to mention
the matter, since failure to make up an issue has been held
error in numerous cases in which parties went to trial with-
out an issue having been made.   *Stephens* v. *Friedman*, 53
W. Va. 79; *Ruffner* v. *Hill*, 21 W. Va. 152; *State* v. *Doug-
lass*, 20 W. Va. 770; *State* v. *Campbell*, 16 W. Va. 736.

In view of the error in giving instruction No. 1. for the
plaintiffs, for which the judgment must be reversed and a
new trial granted, it is unnecessary to pass upon the ruling
of the court on the motion to set aside the verdict for either
of the causes assigned.   Comment on the sufficiency of the
evidence to sustain it would be manifestly improper.   The
rules and principles under which relief may be given on ac-
count of misconduct on the part of jurors are well settled.
Hence, the only inquiry here would be whether the facts in
this case would, under those rules, necessitate the setting
aside of the verdict.   A decision of this question would be
of no value as a precedent, and all the relief a decision favor-
able to the plaintiffs in error would result in, is awarded
them upon another ground.

The judgment will be reversed, the verdict set aside, and
the case remanded for a new trial.

*Reversed.*