## VENERI v. DRAPER.
## MARIOTTI v. SAME.

Circuit Court of Appeals, Fourth Circuit.
October 18, 1927.

Nos. 2638, 2639.

**1. Courts ⟨key⟩352(7)—Under federal practice, District Judge may in proper case refer cause to auditor.**

Under federal practice, District Court judge has power in proper case to refer a cause to an auditor for the purpose of simplifying issues, and thereby enabling the court and jury to more readily determine matters in dispute.

**2. Courts ⟨key⟩352(7)—State statutes authorizing reference to master for determination of issues will not be followed by federal court (Conformity Act [28 USCA, § 724]; Const. Amend. 7).**

Practice prescribed by state statutes, authorizing reference to master for determination of issues in case, will not be followed by the federal courts under the Conformity Act (28 USCA § 724 [Comp. St. § 1537]), because of requirement of the Seventh Amendment to the Constitution that trial by jury be preserved.

**3. Jury ⟨key⟩31(8)—Appointing auditor and receiving report in evidence held not unconstitutional (Const. Amend. 7).**

Appointing an auditor and allowing his report to be received in evidence held not to constitute a violation of Const. Amend. 7.

**4. Reference ⟨key⟩8(3)—Trial court properly referred case involving examination of bank accounts.**

In case involving examination of banking accounts, extending over period of years and embracing large number of deposits and checks, the trial court properly exercised its power to refer case to auditor.

**5. Reference ⟨key⟩29—Order of reference in case involving examination of bank accounts properly directed auditor to report findings as to indebtedness.**

Order of reference, in case involving examination of bank accounts extending over a number of years and embracing numerous deposits and checks, properly directed auditor to report his findings as to the indebtedness of the parties; he being required to take, state, and report an account which would show, not only amount due by party found to be indebted, but also the facts on which such finding could be predicated.

**6. Reference ⟨key⟩99(6)—Auditor's report was properly admitted in evidence, with charge that it was prima facie correct.**

Where case involving examination of bank account, extending over period of years and embracing numerous deposits and checks, was referred to auditor, report of auditor was properly admitted in evidence, with charge that it was prima facie correct.

**7. Courts ⟨key⟩352(7)—Procedure prescribed by state law on reference, being similar under federal practice, may properly be followed by federal court (Barnes' Code W. Va. c. 129, § 10; Conformity Act [28 USCA § 724]).**

Procedure prescribed by Barnes' Code W. Va. c. 129, § 10, in case of reference being

practically the same as that followed under federal practice, may properly be followed by federal courts of West Virginia under the Conformity Act (28 USCA § 724 [Comp. St. § 1537]).

**8. Appeal and error ⟨key⟩260(1)—Appellate court will consider point relating to admission of testimony, which is not based on exception, only in exceptional cases.**

Point relating to admission of evidence, which is not based on an exception in record, will not be considered by appellate court, except in very exceptional cases.

**9. Appeal and error ⟨key⟩260(1)—Assignment of error will not take place of exception.**

An assignment of error will not take the place of an exception to admission of evidence.

**10. Evidence ⟨key⟩353(2), 354(5)—In receiver's action to recover moneys paid on checks and not charged to account, checks and ledger sheets covering accounts held admissible.**

In action by receiver of bank against depositors to recover for moneys paid out on checks of defendants and not charged to respective accounts, checks and ledger sheets covering accounts were admissible in evidence as showing that checks in controversy had not been charged against account.

**11. Banks and banking ⟨key⟩77(6)—Instruction, in receiver's action against depositors, that bank statements showing balance was binding, held properly refused.**

In action by receiver of bank against depositors to recover for moneys, paid out on checks and not charged to their account, requested instruction to effect that, if bank rendered statements showing balance in favor of defendants up to time of its closing, those statements would be binding on parties, held properly refused, in that it would mean sending of statements concluded rights of parties, notwithstanding testimony that bank had paid out large sums for defendants on checks not charged to their accounts.

**12. Account stated ⟨key⟩6(3)—Generally statement of account sent by bank to customer becomes account stated.**

Generally, where statement of account is sent by bank to one of its customers, together with his canceled checks or vouchers, and customer retains them, and does not object to it within a reasonable time, it becomes account stated between bank and depositor.

**13. Account stated ⟨key⟩8—Bank statements sent customer are not conclusive, even after they have been retained and acquiesced in.**

Bank statements sent customer are not conclusive, even after they have been retained and acquiesced in by customer, thereby becoming an account stated, since an account stated may be impeached for fraud, mistake, or error.

**14. Account stated ⟨key⟩12—Account stated, as defense in action at law, may be impeached without resorting to bill in equity.**

Where account stated is asserted as a defense in an action at law, it may be impeached there, without resorting to a bill in equity.

22 F.(2d)—3

15. Banks and banking ⊂⇒77(6)—Evidence as to statements furnished bank depositor being erroneous held sufficient to make question of effect one for jury.

In action by receiver of bank against depositors to recover moneys paid out on defendants' checks and not charged to their accounts, evidence relative to statements rendered by bank being erroneous *held* sufficient to make question as to their effect one for jury.

In Error to the District Court of the United States for the Southern District of West Virginia, at Bluefield; George W. McClintic, Judge.

Separate actions by Charles H. Draper, receiver of and for the First National Bank of Matoaka, against Lorenzo Veneri and against Ermin Mariotti, which cases were tried together in lower court and argued together. Judgments for plaintiff, and defendants separately bring error. Affirmed.

John Kee, of Bluefield, W. Va. (A. J. Lubliner, of Bluefield, W. Va., on the brief), for plaintiffs in error.

D. M. Easley, of Bluefield, W. Va. (D. E. French and J. W. Easley, both of Bluefield, W. Va., on the brief), for defendant in error.

Before PARKER, Circuit Judge, and SOPER and ERNEST F. COCHRAN, District Judges.

PARKER, Circuit Judge. These cases were tried together in the court below and argued together here. They were instituted by the receiver of the First National Bank of Matoaka, W. Va., against Lorenzo Veneri and Ermin Mariotti, to recover for moneys paid out by the bank on the checks of these defendants and not charged to their respective accounts. Bills of particulars were filed, setting forth the checks and showing when and to whom they were paid. In Veneri's case, there were 21 of these checks, totaling $2,053.59, paid at various times between July 17, 1922, and January 26, 1925. In Mariotti's case, there were 47 checks, totaling $7,113.84, paid at various times between July 21, 1920, and February 19, 1925. Under the practice prevailing in West Virginia, the defendants filed specifications of defense, denying that the checks were in fact paid, alleging that defendants at all times had on deposit sufficient funds to meet all checks drawn on their accounts, and pleading that the bank was bound by statements which it had sent defendants from time to time, showing the state of their respective accounts and balances to their credit.

The District Judge found that the cases were such that an account should be taken and stated between the parties, and for that purpose referred them to an auditor or "commissioner," with directions that, in addition to an account showing the indebtedness of the parties, he report all of the facts upon which his findings as to indebtedness should be predicated. The auditor, after hearing evidence, made a report in each case, stating the account between the bank and the defendant therein, and showing that Veneri owed a balance of $1,961.11, and Mariotti one of $6,720.73. In the case of each of the defendants, he reported that they were entitled to certain minor credits, which did not appear on the account of the bank, but that the checks shown in the bill of particulars had been paid by the bank and not charged against them. He found that Veneri had been a depositor from June 6, 1922, to February 25, 1925, during which time he had made 177 deposits and drawn 894 checks, including the 21 checks not charged against him, and that Mariotti had been a depositor from March 1, 1919, to February 25, 1925, and had made 404 deposits and drawn 2,044 checks, including the 47 not charged. With the report in each case he sent the evidence taken and the exhibits.

The report of the auditor was dated the 14th day of January, 1927, and no exceptions seem to have been filed thereto by defendants. On the 7th day of February following the case was heard in the District Court before a jury. The receiver introduced the report of the auditor and testified that the checks described in the bills of particulars had been paid by the bank, but had not been charged against the accounts of defendants. The checks themselves were introduced in evidence, as were the accounts of defendants kept by the bank, showing that the checks had not been charged. Each of the defendants took the stand and testified generally that he had not overdrawn his account, and each introduced a number of statements sent him by the bank showing balances to his credit. Veneri introduced, among others, one showing that on February 25, 1925, he had a balance in the bank of $94.40. Mariotti introduced one showing a balance in his favor on January 31, 1925, of $346.04. Both, however, admitted signing the checks described in the bills of particulars, and neither testified to any deposit with which he was not properly credited in the report of the auditor. The judge, among other things, charged the jury that the report of the auditor was prima facie correct. Defendants requested him to charge that, if

the jury should find that monthly statements were sent by the bank to the defendants, showing a balance due by the bank, these statements would be binding upon the bank, and the jury should find for the defendants. This requested instruction was refused.

Under their assignments of error the defendants make four contentions: (1) That the judge erred in referring the case to an auditor over their objection; (2) that he erred in admitting in evidence the report of the auditor, and in charging the jury that it was prima facie correct; (3) that he erred in admitting in evidence the checks which are the basis of the controversy, and the accounts of the defendants as kept by the bank; and (4) that he erred in refusing the instruction requested.

[1-3] There can be no question, we think, that under the federal practice the judge has the power in a proper case to refer a cause to an auditor for the purpose of simplifying the issues and thereby enabling the court and the jury to more readily determine the matters in dispute. It is true that the practice prescribed by state statutes which authorize reference to a master for determination of the issues in a case will not be followed by the federal courts under the Conformity Act (28 USCA § 724 [Comp. St. § 1537]) because of the requirement of the Seventh Amendment to the Constitution that trial by jury be preserved. But the power is inherent in the federal courts independently of any statute to refer cases involving long accounts or complicated questions of fact to an auditor in advance of a jury trial to "present the case to the court in such manner that intelligent action may be there had." Ex parte Peterson, 253 U. S. 300, 40 S. Ct. 543, 64 L. Ed. 919; Chicago, Milwaukee, etc., Ry. v. Tompkins, 176 U. S. 167, 180, 20 S. Ct. 336, 44 L. Ed. 417; Peterson v. Davison (D. C.) 254 F. 625; U. S. v. Wells (D. C.) 203 F. 146 (opinion by Judge, now Mr. Justice, Sanford); Vermeule v. Reilly (D. C.) 196 F. 226; Craven v. Clark (C. C.) 186 F. 959. And it is settled that appointing an auditor and allowing his report to be received in evidence does not violate the Seventh Amendment. Ex parte Peterson, supra, 253 U. S. at pages 309–312 (40 S. Ct. 546). In that case Mr. Justice Brandeis, in delivering the opinion of the court, pointed out that the Seventh Amendment does not require that old forms of practice and procedure be retained nor prohibit the introduction of new methods for determining what facts are actually in issue so long as the right of trial by jury is not obstructed and the ultimate de-

termination of issues of fact by the jury is not interfered with, and that, so far as the task of the auditor is to define and simplify the issues, his function is in essence the same as that of pleading. After citing a number of cases sustaining his position, he said:

"In view of these decisions, it cannot be deemed an undue obstruction of the right to a jury trial to require a preliminary hearing before an auditor. Nor can the order be held unconstitutional, as unduly interfering with the jury's determination of issues of fact, because it directs the auditor to form and express an opinion upon facts and items in dispute. The report will, unless rejected by the court, be admitted at the jury trial as evidence of facts and findings embodied therein; but it will be treated, at most, as prima facie evidence thereof. The parties will remain as free to call, examine, and cross-examine witnesses as if the report had not been made. No incident of the jury trial is modified or taken away either by the preliminary, tentative hearing before the auditor or by the use to which his report may be put. An order of a court, like a statute, is not unconstitutional because it endows an official act or finding with a presumption of regularity or of verity."

[4] And we think it is equally clear that the power to refer the case to an auditor was properly exercised in this case. As said in the Peterson Case, whether the power shall be exercised is ordinarily a matter resting in the sound discretion of the trial judge; but undoubtedly it is the better practice to refer the case to an auditor, where complex and intricate accounts are to be examined, or where extensive computations are to be made. Veneri's Case involved the examination of a bank account extending over 2½ years and embracing 177 deposits and 894 checks; Mariotti's involved an account extending over approximately 6 years and embracing 404 deposits and 2,044 checks. The case seems comparatively simple, since it has been simplified by the auditor; but it was not simple in the beginning. The payment of the checks in controversy was denied by the specifications of defense, and payment had to be proved, by tracing each check through the dealings between the bank and its correspondents. The allegation that ample funds were deposited to meet the checks necessitated a minute examination of the accounts, for the purpose of determining that deposits were properly credited and that the checks in controversy were not charged. It would have been practically impossible to try the case before a jury, without having the con-

tested matters first simplified by reference to an auditor.

[5] It is said, however, that the order of reference went too far, in directing the auditor to report his findings as to the indebtedness of the parties. We think not. He was directed to take, state, and report an account, which should show, not only the amount due by the party found to be indebted, but also the facts upon which said finding should be predicated. In the Peterson Case, which is an authoritative expression on the practice to be followed in such cases, the auditor was 'expressly required to give his opinion on disputed issues. Thus the sixth paragraph of the order in that case required that he report "the various penalties, commissions, cash discounts, and other deductions which defendant claims to be entitled to deduct from the invoice price of the various shipments, the items thereof which are admitted by plaintiff as proper deductions, and the items in dispute, with his opinion as to each of such disputed items." And in the seventh paragraph he was required to report "his opinion as to the net amount due on each invoice of coal sold and delivered to defendant." And in upholding these provisions of the order, the court said:

"A compulsory reference with power to determine issues is impossible in the federal courts because of the Seventh Amendment (United States v. Rathbone, Fed. Cas. No. 16,121, 2 Paine, 578), but no reason exists why a compulsory reference to an auditor to simplify and clarify the issues and to make tentative findings may not be made at law, when occasion arises, as freely as compulsory references to special masters are made in equity. * * * The inherent power of a federal court to invoke such aid is the same whether the court sits in equity or at law. We conclude, therefore, that the order, in so far as it appointed the auditor and prescribed his duties, was within the power of the court."

[6] In connection with the points as to admitting the report of the auditor in evidence and charging the jury that it was prima facie correct, it should be stated that the court admitted the report merely, and not the evidence and exhibits which accompanied it. And with respect to both points we think that the position of defendants is completely answered by the decision in the Peterson Case, where the court said: "It may be assumed that, if accepted by the court, the report would be admitted at the trial before the jury as prima facie evidence both of the evidentiary facts and of the conclusions of

fact therein set forth. The report, being evidence sufficient to satisfy the burden of proof (Wyman v. Whicher, 179 Mass. 276 [60 N. E. 612]), would tend to dispense with the introduction at the trial before the jury of evidence on any matter not actually in dispute."

And further in the opinion it said: "The report will, unless rejected by the court, be admitted at the jury trial as evidence of facts and findings embodied therein; but it will be treated, at most, as prima facie evidence thereof. The parties will remain as free to call, examine, and cross-examine witnesses as if the report had not been made. * * * The reasons for holding an auditor's report admissible as evidence are, in one respect, stronger than for giving such effect to the report of an independent tribunal like the Interstate Commerce Commission. The auditor is an officer of the court which appoints him. The proceedings before him are subject to its supervision, and the report may be used only if, and so far as, acceptable to the court."

[7] The point that the judge, in making the order of reference, in admitting the report of the auditor in evidence and in charging as to its effect, professed to follow the statute of West Virginia, is without merit. That statute (chapter 129, § 10, of Barnes' West Virginia Code) prescribes practically the same procedure as is approved by the Supreme Court in the Peterson Case. There is no conflict, therefore, between that statute and the Constitution and statutes of the United States, and no reason why the practice which it prescribes should not be followed by the federal courts of West Virginia under the Conformity Act. But, apart from this, the procedure followed was proper, as we have seen, under the federal practice; and where the judge has done the right thing, it will not be held for error that he may have given a wrong reason for doing it.

[8-10] The next contention of defendants relates to the admission in evidence of the checks in controversy and the ledger sheets showing bank accounts of the defendants; but the record does not show that defendants objected to the admission of either the checks or the ledger sheets, or took any exceptions to their admission. The assignments of error challenge the admission of the checks, but not that of the ledger sheets. Only in very exceptional cases, of which this is not one, will we consider a point relating to the admission of testimony which is not based upon an exception in the record; and it is settled that an assignment of error will not take the

place of an exception. We will say, in passing, however, that we do not see why the evidence was not competent. The defendants admitted signing the checks, and the ledger sheets covering defendants' accounts were shown to have been those kept by the bank. They were admissible as showing that the checks in controversy had not been charged against the accounts of defendants.

[11] This brings us to the last point urged by defendants, which relates to the refusal of the requested instruction, to the effect that, if the jury should believe that the bank rendered statements to the defendants, showing a balance in their favor up to the time of its closing, these statements would be binding upon the parties, and the jury should find for the defendants as to the claim based on the alleged overdrafts. We think that the instruction was properly refused. It made the sending of the statements conclusive of the rights of the parties and ignored the testimony that the bank had paid out large sums for the defendants on checks not charged to their accounts, and the legitimate inference that the statements were erroneous and based upon either mistake or fraud. It appeared that the checks in controversy were not returned to defendants, and were not marked paid or canceled by the bank, and that the accounts of the bank and the statements based thereon and sent to defendants were erroneous, because the checks in controversy paid for defendants were not charged to them. Each of the defendants admitted that the checks had not been returned to him, and that the statements which he had received did not show that they had been paid. Under these circumstances we think that to have charged as requested would have been clearly erroneous.

[12-14] The general rule is that, where a statement of account is sent by a bank to one of its customers, together with his canceled checks or vouchers, and the customer retains it, and does not object to it within a reasonable time, it becomes an account stated between the bank and him. Union Tool Co. v. Farmers' & Merchants' Nat. Bank, 192 Cal. 40, 218 P. 424, 28 A. L. R. 1417, 1426; Los Angeles Inv. Co. v. Home Savings Bank, 180 Cal. 601, 182 P. 293, 5 A. L. R. 1193; Brown v. Lynchburg Nat. Bank, 109 Va. 530, 64 S. E. 950, 17 Ann. Cas 119, and note; Greenhalgh v. Farmers' Nat. Bank, 226 Pa. 184, 75 A. 260, 18 Ann. Cas. 330, 134 Am. St. Rep. 1016, and note (relating to balances struck in bank passbook); 3 R. C. L. 532; 1 R. C. L. 213. This does not mean, however, that the bank statements sent the customer are conclusive, even after they have been retained and acquiesced in; for an account stated may be impeached for fraud, mistake, or error. 1 R. C. L. 217; Greenhalgh v. Farmers' Nat. Bank, supra; Los Angeles Inv. Co. v. Home Savings Bank, supra; Harman & Crockett v. Maddy Bros., 57 W. Va. 66, 49 S. E. 1009; Shipman v. Bank of State of New York, 126 N. Y. 318, 27 N. E. 371, 12 L. R. A. 791, 22 Am. St. Rep. 821; notes 29 L. R. A. (N. S.) 348, and and 134 Am. St. Rep. at 1023 and 1024. And it may be impeached by the bank as well as by the customer. 3 R. C. L. 532; Greenhalgh v. Farmers' Bank, supra. And, where asserted as a defense in an action at law, it may be impeached there, without resorting to a bill in equity. 1 R. C. L. 218; Gutshall v. Cooper, 37 Colo. 212, 86 P. 125, 6 L. R. A. (N. S.) 820; Perkins v. Hart, 11 Wheat. 237, 6 L. Ed. 463.

[15] In the case at bar, there was certainly sufficient evidence in impeachment of the statements sent to the defendants to carry the case to the jury. These statements seem to have corresponded with the accounts of the defendants as kept by the bank, upon which, as we have seen, the checks in controversy were not charged. Whether this failure to charge was due to mistake or fraud, it certainly resulted in error in the accounts; and it would appear that it enabled the defendants to obtain large sums of money from the bank which they should pay back. The report of the auditor and the evidence that the checks were signed by the defendants and paid by the bank, but not charged to their accounts, was sufficient evidence that the statements sent the defendants were erroneous to make the question as to their effect one for the jury to decide.

There was no error, and the judgments of the District Court are affirmed.

No. 2638, affirmed.

No. 2639, affirmed.