**NICHOLS et al. v. UNITED STATES.**
No. 6019.

Circuit Court of Appeals, Fifth Circuit.
March 30, 1931.

Jno. W. Gaines, Jr., of Tampa, Fla., for appellants.

W. P. Hughes, U. S. Atty., of Jacksonville, Fla. (W. P. Hughes, U. S. Atty., and Louis S. Joel, Asst. U. S. Atty., both of Jacksonville, Fla., on the brief), for the United States.

Before FOSTER, Circuit Judge, and HUTCHESON and SIBLEY, District Judges.

SIBLEY, District Judge.

Under an indictment in five counts for using the mails to defraud, Claude Nichols and J. W. Nichols were convicted on all counts, J. B. Nichols on three of them, and Nell Sellers Smith on one. Upon their appeal the assignments of error relate to the sufficiency of the indictment, the refusal of the court to direct a verdict of not guilty, the rulings on evidence, and the instructions to the jury.

The fraudulent plan is set forth fully in the first count. The remaining counts do not repeat it, but each after a formal preamble as to the time and venue alleges: "Said defendants so having devised said scheme and artifice to defraud said Central States Life Insurance Company of St. Louis, Missouri, as hereinbefore set forth and described, in pursuance of said scheme, etc.," used the mails in a stated way. The objection is that the counts, except the first, set forth no crime because they do not allege any scheme or artifice to defraud; there being no express adoption of the allegations of the first count. That reference may be made to another count to avoid repetition is well settled. Crain v. United States, 162 U. S. 625, 16 S. Ct. 952, 40 L. Ed. 1097. That a reference in the very form above set forth is sufficient was held in Clark v. United States (C. C. A.) 298 F. 293.

■ The evidence, though circumstantial, was sufficient to carry the case as to each appellant to the jury. It was contended by the prosecution that in 1926, in Lakeland, Fla., Claude Nichols and J. W. Nichols, his brother, planned to take out life and accident insurance in favor of a fictitious person called William Edward Smith, to keep it in force a while, and then have a fictitious accidental death of Smith and collect the policies through a pretended widow. The evidence shows that insurance for $25,000 with double indemnity in case of accidental death was procured in the Central States Life Insurance Company, payable to the estate of Smith, and the policies were received and the first premium paid by Claude Nichols. Other policies issued by Shenandoah Life Insurance Company were never delivered because Smith was not produced to be re-examined, or to receive the policies in person. All communications by mail about the insurance were to be through a mail box in Lakeland, Fla., rented in the name of William Edward Smith, whom the postmaster did not know, but through one William Elbert Smith, whom he did know. All premiums that were paid were paid by or through the two Nichols, or by cashier's checks mailed from places where one of them had been. The policies went into default, and, the company not being able to find Smith, a reinstatement was effected through Claude Nichols. Conflicting statements were made by him about the home of Smith. In February, 1929, Claude Nichols made inquiries in Lakeland about the moral character of the stenographer of a friend there, and whether she would like to make a nice piece of money, but the matter was not followed up. The policies again fell into default, and would become wholly void on June 16, 1929. On June 9, 1929, Nell Sellers, the stenographer of J. B. Nichols, who was another brother practicing law at Miami, being on vacation at her parents' home at Jacksonville, went in company with J. W. Nichols and another man through the rain from Jacksonville to Waycross, Ga., where Nell Sellers and the other man under the name of William Edward Smith were married by the judge of the court of ordinary under a license there procured and paid for by Nichols. The ordinary and his son identified this Smith as the William Elbert Smith of Lakeland; he, however, proving a very good alibi. The bride and groom went back with Nichols to Jacksonville. The next day the bride returned to her father's home and the groom and J. W. Nichols went on to Miami, and on June 13th, joined by J. B. Nichols, went fishing in Biscayne Bay. At dusk, in a rain squall as to whose occurrence there is dispute, the two Nichols claimed that the boat was overturned, and all three men precipitated into the water, where Smith seemed to drown, but without struggle or sinking, the body floating for some half hour with the face downward, and that they were unable to rescue him, though they were expert swimmers. Becoming exhausted, they swam ashore, and the body floated out to sea in their presence and was never recovered. They saved the boat, however, and came back in it and reported the tragedy. The policies were found in the office of J. B. Nichols. He and J. W. Nichols made affidavits of the death, and Nell Sellers executed a proof of death and claim as widow for the insurance. Payment was refused. Inquiry in the county in Florida where the application for insurance stated that William Edward Smith was born was without result. Nothing could be ascertained of his existence in Lakeland. No relative, friend, creditor, debtor, or business associate inquired for him at Miami. No trace of any property or papers or business of his could be found. The apartment of Nell Sellers was searched in her presence, and, though she claimed that Smith had lived there with her whenever he was in Miami for a year before their marriage, no clothing, papers, or effects of his were found there. She could show no photograph, letter, or keepsake from him. A few persons testified to knowing such a man slightly through introduction to him by Nell Sellers or one of the Nichols, and that this acquaintance was not William Elbert Smith, who was alive and at the trial. It was testified that the tide was at full ebb or coming in at the time the drowning was claimed to have happened, and that the body, like the boat, would not have gone out to sea, and that except for a narrow ship channel there was no water at the place which could not be waded at low tide. Experts swore that the body of a drowning person sinks after rising two or three times, and remains under water for forty-eight hours or longer, after which it again rises and floats face up; but there was some dispute as to this. The mailing of letters about the insurance premiums by Claude Nichols, of the affidavits concerning the death by J. B. and J. W. Nichols, and of the proof of death and claim for the insurance through the insurance agent, were the uses of the mail relied on for conviction. Neither appellant testified. The evidence thus stated in outline made a question for the jury as to what the truth was, and whether there

was any reasonable theory of innocence which would explain all the facts. The jury might well conclude that the insurance was fraudulently taken out, and that no drowning occurred; Nell Sellers being taken into the scheme to pretend a marriage and become the sole heir on promise of some sort of division of the money. Although she did not personally mail anything, she executed the insurance claim, intending that it should be mailed to the company by its agent, as it in fact was. She thereby caused the mail to be used to carry out the scheme. She was convicted only on the last count, which relates to the mailing of this paper. There was no error in submitting the case to the jury.

■ The cashier's checks sent to the insurance company in payment of premiums had nothing on them or accompanying them to show who sent them. Each one came through the post office of a place at which one of the Nichols had resided. The objection that it was not proved that either of them had sent the checks was not good. The payment of the premiums to keep the insurance in force was part of the res gestæ, what happened about the insurance. That it was only shown that the Nichols might have paid them rendered the evidence of little weight, but did not make it inadmissible.

■ The testimony of persons at Lakeland, such as the postmaster, that they had never known of a William Edward Smith there, that his name was not in the city directory or telephone books, and that on inquiry they could not learn of him, was admissible. Had they been persons with no especial opportunity to know the residents of Lakeland, and had they made no inquiry for Smith, their not knowing him would have proven nothing. But the burden of showing that no such person had lived in Lakeland could have been borne in no other way than by such proof as was offered. While not a demonstration, it was some evidence of the negative fact to be proved. 23 C. J. "Evidence," §§ 1762, 1790.

■ Testimony was admitted that J. B. Nichols seemed nervous while investigation was in progress touching the boat used on the fishing trip. This was, of course, as objected, a conclusion or opinion of the witness. But where the impressions giving rise to the conclusion cannot be given to the jury so as to enable them to draw the proper conclusion as well as the witness, the conclusion of the witness in connection with the best details of his observations that he can give is allowable. Mayor v. Wood, 114 Ga. 370, 40

S. E. 239. This rule is constantly applied to interpretations of expression of the face or the demeanor of an observed person. 22 C. J. "Evidence," § 705.

■ Evidence that Claude Nichols on his way to Miami in February, 1929, inquired at Lakeland as to the moral character of his friend's female stenographer, and whether she would be interested in making a nice piece of money, was not irrelevant. It was admitted as tending to show that Claude Nichols was seeking a widow for William Edward Smith, later found in Nell Sellers at Miami.

■■ The testimony of physicians and others who had had long and varied experience with drowning and drowned persons as to the behavior of the bodies of such was correctly allowed. This was a proper field for expert testimony, and expertness can come through experience as well as special education. 22 C. J. "Evidence," § 606.

We have examined the instructions to the jury complained of, and find no cause for reversal therein.

Affirmed.