**UNITED STATES of America,**
**Appellee,**

v.

**Richard Allen DE GEORGIA, Appellant.**

**No. 23835.**

United States Court of Appeals
Ninth Circuit.

Dec. 11, 1969.

Philip Fahringer (argued), Tucson, Ariz., for appellant.

JoAnn Diamos (argued), Rubin Salter, Jr., Asst. U. S. Attys., Edward E. Davis, U. S. Atty., Tucson, Ariz., for appellee.

Before HAMLEY, BROWNING and ELY, Circuit Judges.

HAMLEY, Circuit Judge.

Richard Allen De Georgia appeals from a judgment of conviction, entered on a jury verdict, for violating 18 U.S.C. § 2312 (Dyer Act). The offense involved a 1968 Mustang automobile allegedly stolen from the Hertz Corporation, in New York City, and thereafter driven to Tucson, Arizona. The car was recovered from De Georgia on September 9, 1968.

■ Defendant first contends that his written confession, which was received in evidence, should have been excluded because prior to making that confession he was not properly advised of his rights under Miranda v. Arizona, 384 U.S. 436, 474, 86 S.Ct. 1602, 16 L. Ed.2d 694.

The facts pertaining to the warning given defendant before he confessed and the voluntariness or involuntariness of his confession were developed at a hearing held in the absence of the jury. Upon the basis of the evidence so received, the trial court found that defendant had been fully advised as to his rights and that the confession was given voluntarily.

Our examination of the record convinces us that defendant was given the full benefit of *Miranda*, and that the trial court's finding that the confession was given voluntarily is adequately supported by the evidence.

■ Defendant also argues that the evidence is insufficient to establish the essential element that the Mustang was a stolen vehicle at the time it was transported across state lines.[1] Accordingly, he in effect urges, the trial court erred in denying his motion for judgment of acquittal made at the close of the Government's case and renewed at the close of all the evidence.

■ Defendant confessed in writing that he stole the automobile from the vicinity of John F. Kennedy Airport, New York, on or about July 2, 1968.[2] However a confession does not constitute adequate proof of an element of an offense unless, as to that element, the confession is corroborated by other admissible evidence.[3] While the Government did produce other evidence designed to corroborate the confession with regard to the element in question, defendant contends that this other evidence was inad-

---

1. That this is an essential element of a Dyer Act offense, see Lawrence v. United States, 400 F.2d 624, 625 (9th Cir. (1968).

2. At the trial defendant disavowed the confession, stating that he signed it only because law enforcement officers told him that they wanted to "clean up" their books and led him to believe he would be immediately released. Defendant testified that he borrowed the car on July 8, 1968, from a friend who told him that he had leased the vehicle. According to defendant, the friend said defendant could keep the Mustang until December, 1968. Defendant had a prior Dyer Act conviction as a youth offender. The jury apparently did not believe defendant.

3. The general rule is that an accused may not be convicted on his own uncorroborated confession made after commission of the crime. Opper v. United States, 348 U.S. 84, 90, 75 S.Ct. 158, 99 L.Ed. 101 (1954). Such corroboration is necessary for all elements of the offense for which the Government relies upon a post-offense confession. Smith v. United States, 348 U.S. 147, 156, 75 S.Ct. 194, 99 L.Ed. 192 (1954). It is sufficient, however, if the corroboration merely fortifies the truth of the confession, although it may fall short of independently establishing any or all elements beyond a reasonable doubt. *Id.*; Mossbrook v. United States, 409 F.2d 503, 504 (9th Cir. 1969).

missible hearsay and his trial objection thereto should have been sustained.

The evidence offered by the Government in corroboration of defendant's confession that the Mustang was a stolen vehicle consisted of the testimony of Tony Gratta, the Hertz security manager for the company's New York zone. Gratta produced documentary evidence establishing that the Mustang was owned by Hertz, that it was rented to Edward P. Sweeney from John F. Kennedy Airport on June 28, 1968, and that Sweeney returned it to a Hertz station at the airport on June 30, 1968.

Gratta testified, in effect, that the vehicle was not rented or leased by Hertz after that date and therefore was a stolen vehicle when it was taken from the Hertz lot at the airport sometime after June 30, 1968. Gratta based his testimony that the Mustang had not been rented or leased by Hertz after June 30, 1968, upon information he obtained from the Hertz master computer control in Gratta's New York office.

According to Gratta, Hertz does not keep a running written business record of its rental and lease transactions but maintains this information in a computer system. Information concerning all automobile rental and lease agreements is fed into computer consoles located at each Hertz terminal and may be retrieved at the master computer control in Gratta's New York office. He explained that, under this system, one can check the master control to determine when and where a particular vehicle was last rented and when it was returned.[4]

On July 26, 1968, Gratta received information from the Hertz office in Lincoln, Nebraska, that led him to believe that the Mustang might have been stolen. He thereupon checked the master computer control in his office and ascertained that the automobile in question had been returned to the Hertz office at the New York airport on June 30, 1968, and that there was no subsequent rental or lease activity recorded. Gratta testified that this indicated that the vehicle had been stolen.

Counsel for defendant objected to the admission of this evidence upon the ground that it was hearsay. As amplified in his motions for judgment of acquittal and in his briefs on appeal, counsel believes that the evidence was hearsay because it amounted to an assertion by those who placed rental and lease information into the Hertz computer system (and who were not called as witnesses) that no such transaction involving the Mustang occurred after June 30, 1968.[5]

This view finds support in the writings of Professor Wigmore. He has expressed the view that the absence of an entry concerning a particular transaction in a regularly-maintained business record of such transactions, is equivalent to an assertion by the person maintaining the record that no such transaction occurred. 5 Wigmore, Evidence (3d Ed.) §§ 1531, 1556, pages 392, 410.

But, assuming that the evidence was hearsay, this does not conclude the matter. There are many exceptions to the hearsay rule, one of which is the business records exception which, in the federal courts, is legislatively declared in the Business Records Act, 28 U.S.C. § 1732. See Phillips v. United States, 356 F.2d 297, 307 (9th Cir.1965). Professor

4. For a general description of how information-retrieving computers function see Evidence: The Admissibility of Computer Print-outs in Kansas, note 8, Washburn Law Journal (1969) 303–332.

5. Counsel did not make any point of the fact that the records examined by Gratta in reaching this conclusion were maintained in a computer system rather than in a running written business record of rental and lease transactions. In any event, paragraph (a) of 28 U.S.C. § 1732, which is the part of the Federal Business Records Act which concerns us here, does not require that, to be admissible, the record must be in writing. That paragraph involves the admissibility of "any writing *or record*, whether in the form of an entry in a book *or otherwise,* made as a memorandum or record of any act, transaction * * *." (Emphasis supplied.)

Wigmore believes that negative testimony of the kind described above, based upon what regularly-maintained business records do not show, is admissible hearsay as a corollary to the exception that records made in the regular course of business are admissible. Wigmore, *ibid.*

A contrary view was stated in Shreve v. United States, 77 F.2d 2, 7 (9th Cir. 1935), as one of several alternative reasons for reversing a district court judgment. We there acknowledged that the decisions were not entirely in accord on the point, but cited decisions from five states in support of the rule against the admission of such negative testimony. No federal decisions were cited. As to one of these states, Vermont, *Shreve* was in error in implying that the then prevailing rule was against admissibility, and in another, California, the rule was later changed in favor of admissibility.[6] In a third state, Massachusetts, the former rule against admissibility has been somewhat modified, and in a fourth state, New York, the rule against admissibility has been adhered to since Shreve.[7]

All of the other United States Courts of Appeals which have passed upon the matter have held such evidence admissible.[8] This is also the rule by statute in at least five states.[9] This rule of admissibility was proposed in the Uniform Rules of Evidence, Rule 63(14), as drafted by the National Conference of Commissioners on Uniform State Laws, and approved by it at its annual conference in 1953. The Uniform Rules were also approved by the American Bar Association in 1953.

■ The rule that such evidence is admissible has also been proposed by the Committee on Rules of Practice and Procedure of the Judicial Conference of the United States. In the committee's March 1969 Preliminary Draft of Proposed Rules of Evidence for the United States District Courts and Magistrates, Rule 8-03, "Hearsay Exceptions: Availability of Declarant Immaterial," reads in part:

"(a) GENERAL PROVISIONS. A statement is not excluded by the hearsay rule if its nature and the special circumstances under which it was made offer assurances of accuracy not likely to be enhanced by calling the declarant as a witness, even though he is available.

"(b) ILLUSTRATIONS. By way of illustration only, and not by way of limitation, the following are examples of statements *conforming* with the requirements of this rule:

\* \* \*

"(7) ABSENCE OF ENTRY IN RECORDS OF REGULARLY CONDUCTED ACTIVITY. Evidence that a matter is not included in the memoranda, reports, records, or data compilations, in any form, of a regularly conducted activity, to prove the nonoccurrence or nonexistence of the matter, if the matter was of a kind of which a memorandum, report, record, or data compi-

---

6. Smythe v. Central Vermont Ry. Co., 88 Vt. 59, 90 A. 901 (1914); People v. Torres, 201 Cal.App.2d 290, 20 Cal.Rptr. 315 (1962).

7. See Cohen v. Boston Edison Co., 322 Mass. 239, 76 N.E.2d 766 (1948) (distinguishing Riley v. Boehm, 167 Mass. 183, 45 N.E. 84 (1896) relied on in *Shreve*); Gravel Products Division of Buffalo Crushed Stone Corp. v. Sunnydale Acres, 10 Misc.2d 323, 171 N.Y.S.2d 519, 521–522 (1958).

8. Third Circuit: Zurich v. Wehr, 163 F.2d 791 (1947); Fourth Circuit: Veneri v.

Draper, 22 F.2d 33 (1927); Fifth Circuit: McClanahan v. United States, 292 F.2d 630 (1961); Keith v. United States, 250 F.2d 355 (1958); Nichols v. United States, 48 F.2d 46 (1931). In McClanahan, the Fifth Circuit said: " \* \* \* this, in fact, is frequently the only way in which a negative fact can be proved." 292 F.2d at 637.

9. Texas Laws 1951, ch. 321 (Art. 3737, § 3, Tex.Stat.Ann.); Michigan Comp.Laws, 48, § 600.2146; California Evidence Code, § 1292; Kans.Code of Civ.Proc. 60–460 (n); New Jersey Ev. Rule 63(14).

lation was regularly made and preserved."[10]

■ Regularly-maintained business records are admissible in evidence as an exception to the hearsay rule because the circumstance that they are regularly-maintained records upon which the company relies in conducting its business assures accuracy not likely to be enhanced by introducing into evidence the original documents upon which the records are based.

In our view, this same circumstance offers a like assurance that if a business record designed to note every transaction of a particular kind contains no notation of such a transaction between specified dates, no such transaction occurred between those dates. Moreover, in our opinion, that assurance is not likely to be enhanced by the only other means of proving such a negative; that is by bringing into court all of the documents involving similar transactions during the period in question to prove that there was no record of the transactions alleged not to have occurred, and calling as witnesses all company personnel who had the duty of entering into transactions of that kind during the critical period and inquiring whether the witnesses remembered any additional transactions for which no record had been produced.

■ As applied to the case now before us, this alternative method of proving the negative would have been singularly burdensome and unrewarding. An enormous volume of rental and lease contracts would have had to be brought into court. In addition, the Government would have been required to call as witnesses every Hertz employee who might have consummated a lease or rental of the Mustang during the period between June 30, 1968, the date the car was returned after its last recorded rental, and at least July 26, 1968, the date that Gratta first received information that the car was stolen. These employees would have had to be asked to state from memory whether, out of all of the lease and rental transactions which they had entered into during that time, there was any rental of this particular Mustang. Recourse to the Hertz computer avoided these difficulties.[11]

We are in accord with the rule permitting admission of such hearsay evidence, as formulated in Proposed Rule

10. The Advisory Committee's Note to this proposed rule reads:

"*Example (7)*. Failure of a record to mention a matter which would ordinarily be mentioned is satisfactory evidence of its nonexistence. While probably not hearsay as defined in Rule 8–01, *supra*, decisions may be found which class the evidence not only as hearsay but also as not within any exception. In order to set the question at rest in favor of admissibility, it is specifically treated here. McCormick § 289, p. 609; Morgan, Basic Problems of Evidence 314 (1963); 5 Wigmore § 1531; Uniform Rule 63(14); California Evidence Code § 1272; Kansas Code of Civil Procedure § 60–460(n); New Jersey Evidence Rule 63(14)."

11. While, as stated above, it is immaterial that the business record is maintained in a computer rather than in company books, this is on the assumption that: (1) the opposing party is given the same opportunity to inquire into the accuracy of the computer and the input procedures used, as he would have to inquire into the accuracy of written business records, and (2) the trial court, as in the case of challenged business records, requires the party offering the computer information to provide a foundation therefor sufficient to warrant a finding that such information is trustworthy.

In our case defendant had a full opportunity, upon cross-examination, to inquire into the company practice of feeding information as to all car rentals and leases into the computer, and as to the accuracy of the computer in retaining and retrieving such information. The Government presented foundation evidence as to input procedures used. While the Government did not produce expert testimony as to the mechanical accuracy of the computer, it did establish that it was sufficiently accurate so that Hertz relied upon it in conducting its business. We need not decide whether this was an adequate foundation, because defendant raised no question in the trial court as to the mechanical accuracy of the computer.

8–03(b) (7), quoted above, which rule is supported by the weight of modern authority. With the knowledge and approval of all of the members of the court in active service, we therefore disapprove the holding in *Shreve* that such evidence is inadmissible.

It follows that Gratta's testimony to the effect that the Mustang was a stolen vehicle when it was transported across state lines after July 2, 1968, was properly received in evidence and provides adequate corroboration of defendant's confession to the same effect.

■ In his reply brief defendant argues, for the first time, that reception of Gratta's testimony violated the best evidence rule which required that the business records be introduced into evidence.

No such objection having been made in the trial court, we decline to consider the contention here.

Affirmed.

ELY, Circuit Judge (concurring).

I concur in the majority opinion, but I reemphasize that the appellant, in objecting to the questioned evidence, did not rely upon the best evidence rule. Had an objection been made on this basis, I would be more troubled by admission of this testimony, since the computer print-out sheets could have been made available as evidence that there was no transaction recorded.

Moreover, I wish to add a few cautionary words of my own. As Judge Hamley points out, the business records exception to the hearsay evidence rule is grounded on the probability of accuracy that is provided by the fact that, in the regular course of business, certain records are maintained and relied upon in daily business operations. The Federal Business Records Act was designed to conform this exception to the practices of modern business by eliminating the traditional requirement that the authenticity of the records be established by the personal testimony of their maker.[1] Eliminating this requirement, however, should in no way alleviate the need for proof that the particular records have a high degree of trustworthiness. Palmer v. Hoffman, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645 (1943).

The requirement of trustworthiness was, I think, incorporated into the Business Records Act by means of the phrase, "in regular course of * * * business." I believe that this criterion of admissibility is nothing more than an assessment of the probability that records ordinarily made in the regular course of business are likely to be accurate. Thus, it is a prerequisite that a firm foundation of admissibility must be

---

1. The second paragraph of section 1732 (a) provides that

"All other circumstances of the making of such writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but such circumstances shall not affect its admissibility."

The Supreme Court gave this paragraph its proper meaning in Palmer v. Hoffman, 318 U.S. 109, 63 S.Ct. 477, 87 L. Ed. 645 (1943). The Court noted that the basis of the exception was circumstances indicating a probability of trustworthiness in any particular case. The Court went on to say,

"Nor is it any answer to say that Congress has provided in the Act that the various circumstances of the making of the record should affect its weight not its admissibility. *That pro-*vision comes into play only in case the other requirements of the Act are met." *Id.* at 114, 63 S.Ct. at 481. (Emphasis supplied). I interpret this language to eliminate the need for bringing into court the maker of the record to show his personal knowledge but not to eliminate the need for laying a convincing foundation for introduction of the records. *See* S. Rep. No. 1965, 74th Cong., 2d Sess. 1 (1936).

Although I cannot see that the prosecution laid a strong foundation for the introduction of the questioned evidence in this case, there was no objection on the ground that foundation was lacking. The only objection was based on the ground that the evidence was hearsay, and Judge Hamley has explained why that objection was properly overruled.

laid by convincing the trial court that the circumstances of the making of the record are such that accuracy is not merely probable, but *highly* probable. Bisno v. United States, 299 F.2d 711, 718 (9th Cir.1961). This principle becomes even more important when related to the questioned introduction of a summary of that which would be found in the records themselves. *See* United States v. Hickey, 360 F.2d 127, 144 (7th Cir.1966). In fact, some courts have indicated that summaries are inadmissible unless the basic records are offered into evidence. *See, e. g.,* McDaniel v. United States, 343 F.2d 785 (5th Cir.1965); Fairchild Stratos Corp. v. Lear Siegler, Inc., 337 F.2d 785 (4th Cir.1964).

The problems concerned with mere summaries of records are likely to increase as electronic data processing equipment increasingly becomes a more normal means of keeping records. Summaries, in the form of print-out sheets, of voluminous data stored in a computer may be a more desirable form of evidence than admission of all the separate documents that were transcribed into the computer. Moreover, when a party seeks to prove the negative, that mention of a transaction of a specified character cannot be found in the records, then a summary may necessarily suffice. But in order fully to protect the defendant in a criminal case from undue infringement of his right to confrontation of the witnesses, this type of evidence should still be strictly tested. As the Supreme Court has stated, in dealing with hearsay evidence, "The reason for excluding this evidence as an *evidentiary* matter also requires its exclusion as a *constitutional* matter." Bruton v. United States, 391 U.S. 123, 136 n. 12, 88 S. Ct. 1620, 1628, 20 L.Ed.2d 476 (1968) (Emphasis in original).

At least one court has recently given careful consideration to the question of whether a computer's print-out sheets constituted admissible evidence. The court noted that the best evidence rule might actually support the use of the computer sheets and concluded,

" * * * we hold that print-out sheets of business records stored on electronic computing equipment are admissible in evidence if relevant and material, without the necessity of identifying, locating, and producing as witnesses the individuals who made the entries in the regular course of business if it is shown (1) that the electronic computing equipment is recognized as standard equipment, (2) the entries are made in the regular course of business at or reasonably near the time of the happening of the event recorded, and (3) the foundation testimony satisfies the court that the sources of information, method and time of preparation were such as to indicate its trustworthiness and justify its admission."

King v. State for Use and Benefit of Murdock Acceptance Corp., 222 So.2d 393 (Miss.1969).

The Federal Business Records Act should never be construed as authorizing *carte blanche* admission into evidence of any and all information that can be obtained from the records of a business. It most certainly should not be construed so as to permit the introduction of hearsay record evidence in the nature of opinion or conclusion testimony as distinguished from recordation of facts. It must be remembered, too, that the statute creates an exception to the basic principle that entitles an accused to confront the witnesses against him. In a day when the pace of our technology threatens to exceed the development of rules for governing human conduct, we must be careful to insure that fundamental rights are not surrendered to the calculations of machines. If a machine is to testify against an accused, the courts must, at the very least, be satisfied with all reasonable certainty that both the machine and those who supply its information have performed their functions with utmost accuracy. Therefore, it is essential that the trial court be convinced of the trustworthiness of the particular records before admitting them into evidence. And it should be

convinced by proof presented by the party seeking to introduce the evidence rather than receiving the evidence upon the basis of an inadequate foundation and placing the burden upon the objector to demonstrate its weakness. The majority appears to acknowledge this desideratum, but I think the principle deserves more emphasis than that given by the somewhat casual comment made in Footnote 11 of my Brother Hamley's opinion.