**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Albert PADILLA, Defendant-Appellant.**

No. 71–2214.

United States Court of Appeals, Ninth Circuit.

March 31, 1972.

Rehearing Denied April 26, 1972.

John O. Fugazi, (argued), Stockton, Cal., for defendant-appellant.

Brewster W. Morgan, Asst. U. S. Atty., (argued), William B. Shubb, Asst. U. S. Atty., Sacramento, Cal., for plaintiff-appellee.

Before CHOY and GOODWIN, Circuit Judges, and PREGERSON, District Judge.[*]

CHOY, Circuit Judge:

Albert Padilla was convicted by a jury of possessing goods which had been stolen from a foreign shipment, in violation of 18 U.S.C. § 659. He appeals.

In December, 1969, two transport vessels of the Pacific Far East Lines, the S. S. Golden Bear and the S. S. Korea Bear, docked in Stockton, California. Both carried shipments destined for various J. C. Penney stores around the country. Quantities of clothing were stolen from both shipments some time before the goods arrived at Penney's store in Stockton to be inspected by the company's employees.

On January 30, 1970, some of the stolen merchandise was found by Stockton police in a car belonging to James Stephens during a search incident to his arrest for drunk driving.

At the trial, James Stephens testified that he purchased the Penney's clothing from Padilla. The latter does not dispute that the goods were stolen from the shipments which came in on the Golden Bear and the Korea Bear. This appeal focuses on the issue: Was the evidence sufficient to establish that the goods were stolen while moving in foreign commerce, as stated in the indictment? We rule in the affirmative.

The evidence at trial established that almost all goods unloaded on the Stockton docks are first counted by dock clerks right after the shipment is taken from the ship and placed on the unloading pier in a "transit shed."

After the "transit shed" count, some cargo is loaded onto a truck or railroad car, depending on the consignee's instructions. Other cargo is stored at the warehouses within the Stockton port facility, until specific instructions are received from the consignee, as to destination and means of transportation.

Penney's goods are ordinarily taken to a port warehouse for storage, awaiting Penney's further instructions. Because the volume of Penney's shipments is so large, Warehouse No. 5 is set aside solely for merchandise destined for any Penney's store.

At the warehouse, the goods are again counted—this time by a warehouse clerk. However, the warehouse clerk may not get around to counting a given shipment until days after it arrives at the warehouse from the dock. A document entitled "Receipt For Cargo Delivered From Pier" is prepared by the warehouse clerk and sent to the head office of the port facility.

---

[*] The Honorable Harry Pregerson, United States District Judge for the Central District of California, sitting by designation.

The warehouse clerk at Warehouse No. 5 who counted the subject shipments was Jess Lopez, Padilla's half-brother. Lopez testified that he discovered Penney's losses, which he noted on a Receipt for Cargo Delivered From Pier. These documents were admitted into evidence as records prepared in the regular course of business, over the objection of Padilla's counsel that they were not the best evidence. Also admitted over the same objection were documents, entitled "Over, Short & Damage Reports," (OS&D) which were prepared by other clerks from the receipts made up by Lopez.

■ Padilla contends that the evidence does not establish that the goods were still in foreign commerce at the time they were stolen; that since Penney's could have ordered the goods put on truck or rail and delivered immediately, it had the power to accept the goods before they reached Warehouse No. 5; and that when it ordered the goods stored at the warehouse, they were taken out of foreign commerce.[1] We disagree.

In Sterling v. United States, 333 F.2d 443 (9th Cir. 1964), this court considered a similar indictment for theft from a foreign shipment. We held that cases of Scotch whiskey stolen from a shipment while some of the cargo was still passing through customs constituted a theft from foreign commerce. Although the facts of *Sterling* place the theft at a point in time prior to the discovery of Penney's losses by Lopez, that case provides us with some guidelines.

The issue is not whether the ownership of the goods has passed to the consignee. We are not concerned necessarily with risk of loss; i. e., whether Penney's had accepted the merchandise by instructing the port personnel to hold the items at Warehouse No. 5 is not dispositive.

The goods were still within the port facility when the loss was discovered. The theft occurred some time before the warehouse count was made, including the period they were in Warehouse No. 5 pending the count. We hold that goods within the port warehouse were still in the ambit of foreign commerce.

This rule is similar to that expressed by Learned Hand in United States v. Sherman, 171 F.2d 619 (2d Cir. 1948). The facts of *Sherman* were the inverse of the instant case. A manufacturer of canvas contracted with a trucking company to transport a shipment of canvas destined for Kenya from his New York plant to the New York docks. While the truck driver was in the process of taking the bill of lading to the shipping clerk, he left his truck motor running and the thieves drove it away. The court ruled that the goods had already been placed in foreign commerce, the goods being at the docks.

Here, the goods were coming in the opposite direction. However, the situs of the theft is the same—the docks. The principle which led the Sherman court to uphold the conviction there has the same pertinence here. Padilla's conviction is supported by sufficient evidence that the theft occurred while the goods were still in foreign commerce.

■ Padilla further contends that the district judge erred in admitting the various documents which evidenced the theft. The documents were within the definition of business records. United States v. DeGeorgia, 420 F.2d 889 (9th Cir. 1969). Moreover, the testimony of those who prepared the documents established their accuracy. No error was committed in admitting such evidence.

Affirmed.

---

1. Padilla was charged with violating 18 U.S.C. § 659, which covers thefts from "foreign or interstate commerce." Had Padilla been charged in the alternative, no serious challenge to the sufficiency of the indictment would have been available.