**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

U-HAUL INTERNATIONAL, INC; U-HAUL OF PENNSYLVANIA; U-HAUL COMPANY OF FLORIDA; REPUBLIC WESTERN INSURANCE COMPANY,
    *Plaintiffs-counter-defendants-Appellees,*

v.

LUMBERMENS MUTUAL CASUALTY COMPANY,
    *Defendant-counter-claimant-Appellant.*

No. 07-16187

D.C. No.
CV-04-00662-DGC

OPINION

Appeal from the United States District Court
for the District of Arizona
David G. Campbell, District Judge, Presiding

Argued and Submitted
January 15, 2009—San Francisco, California

Filed August 12, 2009

Before: J. Clifford Wallace, Jerome Farris and
M. Margaret McKeown, Circuit Judges.

Opinion by Judge Wallace

## COUNSEL

Michael C. Bruck, Alyssa M. Campbell and Brian Y. Boyd, Williams Montgomery & John Ltd., Chicago, Illinois, for the defendant-appellant.

Bruce M. Friedman, Rubin, Fiorella & Friedman LLP, New York, New York, for the plaintiffs-appellees.

---

## OPINION

WALLACE, Senior Circuit Judge:

Lumbermens Mutual Casualty Company (Lumbermens) appeals from the district court judgment in favor of U-Haul and Republic Western Insurance Company (Republic Western). Although Lumbermens raises a number of issues, in this opinion we deal with only its argument that the district court abused its discretion in admitting into evidence certain computer-generated summaries of payments made on insurance claims. We address Lumbermens' other arguments in a companion unpublished disposition. The district court had jurisdiction pursuant to 28 U.S.C. § 1332. We have jurisdiction over this timely filed appeal pursuant to 28 U.S.C. § 1291. We affirm the judgment of the district court.

## I.

During the relevant coverage periods of April 1, 1999 through March 31, 2000 and April 1, 2000 through March 31, 2001, U-Haul was protected by liability insurance coverage consisting of primary and excess insurance policies. Republic Western, the primary insurer, provided primary and excess coverage up to a total limit of $7,000,000 per occurrence in excess of $25,000 for which U-Haul is self-insured. The total products aggregate limits on Republic Western's policies were $13,000,000 during the first policy year and $14,000,000 during the second policy year. U-Haul also purchased an excess insurance policy from Lumbermens, which provided excess coverage up to a limit of $13,000,000 per occurrence, and a products aggregate coverage of $13,000,000 for each policy year. The Lumbermens policy

did not become payable until the $25,000 self-insurance from U-Haul and the $7,000,000 coverage provided by the underlying Republic Western policies had been exhausted.

U-Haul settled three claims that implicated these insurance policies. Republic Western and Lumbermens funded the defense and settlement costs of each insurance claim, but agreed under a reservation of rights to dispute issues as to each party's coverage obligations. At the heart of the parties' dispute was whether payments of loss adjustment expenses, which are legal fees incurred in the investigation, negotiation and defense of an insurance claim, made by Republic Western should be considered in determining whether the Republic Western policies had been exhausted. That issue determines the amount that Lumbermens is obligated to pay under its excess policy.

On February 5, 2004, U-Haul and Republic Western jointly filed a complaint against Lumbermens for breach of contract and declaratory relief, alleging that Lumbermens had not paid sufficient amounts on two of the claims. Lumbermens filed a counterclaim against U-Haul, Republic Western and others, seeking reimbursement for amounts that it had allegedly overpaid on the two claims. After entering summary judgment in favor of U-Haul and Republic Western on several legal issues, including the respective obligations of Republic Western and Lumbermens under the insurance policies, the district court held a bench trial on the issue of damages. Central to that issue was the amount Republic Western had paid on each claim because this would determine when Lumbermens' excess policy was triggered and how much Lumbermens would be required to pay.

At trial, Thomas Matush, a claims manager at Republic Western, testified regarding the amounts Republic Western paid in the course of defending and settling the claims. He testified about Exhibits 28, 29 and 30, which contained computer-generated summaries of payments for loss adjust-

ment expenses made by Republic Western on the insurance claims. Each exhibit related to an individual insurance claim. Each exhibit included a summary page showing the indemnity and expenses paid on the claim, the names of each vendor paid on the claim, and the total amounts paid to each vendor. Also included were additional pages listing vendor numbers, transaction dates, check numbers, and amounts of payments made.

Lumbermens objected to the admission of the exhibits on the grounds that they were inadmissible hearsay, not subject to the exception in Federal Rule of Evidence 803(6), and that they also violated Federal Rules of Evidence 901 and 1006. The district court admitted the exhibits. On March 19, 2007, the district court entered judgment in favor of Republic Western and U-Haul in the amount of $1,958,535.69.

We review evidentiary rulings for an abuse of discretion. *Tritchler v. County of Lake*, 358 F.3d 1150, 1155 (9th Cir. 2004). Findings of fact made in a bench trial are reviewed for clear error, and conclusions of law are reviewed *de novo*. *Friends of Yosemite Valley v. Norton*, 348 F.3d 789, 793 (9th Cir. 2003).

## II.

Lumbermens argues that the district court abused its discretion in admitting the exhibits containing the computer-generated summaries reflecting Republic Western's indemnity payments and loss adjustment expense payments for the insurance claims. It contends that the summaries are hearsay not fitting within the business records exception, and therefore, should have been excluded.

**[1]** Rule 803(6) provides that records of regularly conducted business activity meeting the following criteria constitute an exception to the prohibition against hearsay evidence:

> A . . . report, record, or data compilation, in any
> form, of acts, events, condition, opinions, or diagno-
> ses, made at or near the time by, or from information
> transmitted by, a person with knowledge, if kept in
> the course of a regularly conducted business activity,
> and if it was the regular practice of that business
> activity to make the . . . report, record or data compi-
> lation, all as shown by the testimony of the custodian
> or other qualified witness . . . unless the source of
> information or the method or circumstances of prep-
> aration indicate lack of trustworthiness.

**[2]** We have made clear that "[f]or the purposes of Rule
803(6), 'it is immaterial that the business record is maintained
in a computer rather than in company books.' " *Sea-Land
Serv., Inc. v. Lozen Int'l, LLC*, 285 F.3d 808, 819 (9th Cir.
2002), *quoting United States v. Catabran*, 836 F.2d 453, 457
(9th Cir. 1988). A logical extension on that principle is that
evidence that has been compiled from a computer database is
also admissible as a business record, provided it meets the
criteria of Rule 803(6). *Accord United States v. Fujii*, 301
F.3d 535, 539 (7th Cir. 2002) (holding that computer data
compiled in the ordinary course of business and presented in
computer printouts prepared for trial is admissible under Rule
803(6)); *Potamkin Cadillac Corp. v. B.R.I. Coverage Corp.*,
38 F.3d 627, 632 (2d Cir. 1994) ("A business record may
include data stored electronically on computers and later
printed out for presentation in court, so long as the original
computer data compilation was prepared pursuant to a busi-
ness duty in accordance with regular business practice") (cita-
tion and internal quotations omitted); *see also* B. Weinstein
and M.A. Berger, *Weinstein's Federal Evidence* § 901.08[1]
(2d. ed. 2006) (stating that "printouts prepared specifically for
litigation from databases that were compiled in the ordinary
course of business are admissible as business records to the
same extent as if the printouts were, themselves, prepared in
the ordinary course of business. The important issue is

whether the database, not the printout from the database, was compiled in the ordinary course of business").

**[3]** In this case, the exhibits summarizing loss adjustment expense payments for each claim fit squarely within the business records exception of Rule 803(6). As the district court found (1) the underlying data was entered into the database at or near the time of each payment event; (2) the persons who entered the data had knowledge of the payment event; (3) the data was kept in the course of Republic Western's regularly conducted business activity; and (4) Mr. Matush was qualified and testified as to this information. The record does not indicate that any of these factual findings is clearly erroneous.

**[4]** Matush, Republic Western's claims manager, testified that Republic Western employees input a record of each loss adjustment expense payment into a database at the time Republic Western made each payment. Republic Western employees would then query the database to compile the payment information, generating a summary of the defense costs for each of the claims. Matush testified that the summaries are "routinely run . . . for information, claim specific. It's part of our business practice. See where we are in the claim, basically." Matush prepared the individual summaries that were admitted to prove damages on the insurance claims. The data compilations therefore meet the requirements of Rule 803(6), and thus constitute a business record excepted from the hearsay prohibition.

**[5]** There is no merit to Lumbermens argument that the exhibits constitute evidence prepared solely for the purposes of litigation and not kept in a company's regular course of business. In *United States v. Arias-Izquierdo*, a case cited by Lumbermens, the evidence which was deemed inadmissible hearsay, not excepted by Rule 803(6), was a typed summary of handwritten business record that was prepared solely for litigation. 449 F.3d 1168, 1184 (11th Cir. 2006). In contrast, the company in this case kept the computerized database in

the regular course of business and regularly compiled summaries of payment histories in the regular course of business.

**[6]** Lumbermens next argues that Matush was not qualified to attest to the data entered into the database because he did not input each piece of data that underlies the summaries. However, there is no dispute that Matush, as a Republic Western claims manager, was qualified to testify about the business practices and procedures for inputting the underlying data. It is not necessary for each individual who entered a record of payment into the database to testify as to the accuracy of each piece of data entered. *See United States v. Smith*, 609 F.2d 1294, 1302 (9th Cir. 1979) ("The witness must only be in a position to attest to [the evidence's] authenticity") (citation and internal quotations omitted); *see also Thanong-sinh v. Bd. of Educ.*, 462 F.3d 762, 777 (7th Cir. 2006) (holding that the qualified witness "need only be familiar with the company's recordkeeping practices"); *Weinstein's Federal Evidence* § 803.08[4] (stating that witnesses to an electronic data compilation need not personally enter the data).

Lumbermens next argues that the summaries lack the requisite indicia of trustworthiness under Rule 803(6). *See* Fed. R. Evid. 803(6) (a business record does not qualify as a hearsay exception where "the source of information or the method or circumstances of preparation indicate lack of trustworthiness"). During trial, the district judge asked Matush to match up a specific payment to the summary sheet, and Matush was unable to locate the corresponding entry. However, the judge engaged in thorough follow-up questioning on this point, and Matush detailed to the judge's satisfaction how the summary sheet matched up to backup documentation.

The district court did not abuse its discretion in admitting the summaries as a business record.

## III.

Lumbermens argues that the summaries should not have been admitted because the underlying computer data was not

properly authenticated as prescribed in Rule 901. But
"[e]vidence describing a process or system used to produce a
result and showing that the process or system produces an
accurate result" is an example of a method of authenticating
a process or system. Fed. R. Evid. 901(b)(9). Lumbermens
does not specify precisely how Republic Western and U-Haul
failed to authenticate the computer summaries, and it has not
shown how the district court abused its discretion in admitting
the evidence.

We have held that "[i]t is not necessary that the computer
programmer testify in order to authenticate computer-
generated records." *United States v. Miller*, 771 F.2d 1219,
1237 (9th Cir. 1985). A computer printout may be authenti-
cated by "one who has knowledge of the particular record sys-
tem." *Id*., *quoting* Notes of the Committee on the Judiciary,
S. Rep. No. 93-1277, 93rd Cong., 2d Sess. 17 (1974). Simi-
larly, a party " 'need not produce expert testimony as to [the]
mechanical accuracy of [a] computer where it presented evi-
dence that [the] computer was sufficiently accurate [so that
the] company relied upon it in conducting its business.' " *Id*.,
*citing United States v. De Georgia*, 420 F.2d 889, 893 n.11
(9th Cir. 1969).

**[7]** In this case, Matush testified regarding the process of
inputting data into the computer and the process of querying
the computer to compile the information to create the summa-
ries. Matush testified that he was familiar with the record-
keeping practices of the company, testified regarding the
computer system used to compile and search the insurance
claim records, and testified regarding the process of querying
the computer system to create the summaries admitted at trial.
This description of the process used to create the summaries
was sufficient to authenticate the evidence, and the district
court did not abuse its discretion in holding that a sufficient
foundation was laid to admit the exhibits.

## IV.

**[8]** Finally, Lumbermens argues that the exhibits containing the summaries were inadmissible because they violated Rule 1006. That rule allows "the contents of voluminous writings . . . which cannot conveniently be examined in court" to be presented in the "form of a chart, summary, or calculation." Fed. R. Evid. 1006. However, the rule requires that the originals, or duplicates, be made available for examination or copying by other parties at a reasonable time or place. *Id*. As discussed in Section II above, the summaries *themselves* constituted the business records. They were the writings at issue, not summaries of other evidence. Thus, Rule 1006 does not apply.

**AFFIRMED.**